ARMITAGE, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. P. RY. CO., APPELLANT.

(No. 3,787.)

(Submitted June 9, 1917. Decided June 28, 1917.)

[166 Pac. 301.]

*Personal Injuries—Railroads—Master and Servant—Failure of Proof—Variance—Safety Appliances Acts—Duty of Carrier—Excessive Verdict.*

Personal Injuries—Railroads—Master and Servant—Failure of Proof—Variance.

1. The complaint in an action against a railroad company charged that the defendant negligently, recklessly and carelessly caused and permitted the braking appliance and the chains, mechanisms and fastenings on a certain freight-car to become defective, *etc.,* and that this negligence was the proximate cause of plaintiff's injury. The evidence was that the car was equipped with hand-brakes, and that a part of the equipment was a chain connecting two parts of the mechanism, which, instead of being over a hook, was lashed to the under side of it by means of rusty bailing wire, and that it was this wire which broke and caused plaintiff's fall and consequent injury, *Held,* that, as the wire served the purpose of a connecting link between the chain and brake rod, it was fairly comprehended within the general descriptive terms employed in the complaint, and there was no failure of proof or fatal variance.

Same—Federal Safety Appliance Acts—Duty of Carrier.

2. The Federal Safety Appliance Acts, *held* to impose upon the carrier an absolute duty not only to equip its cars with the prescribed appliances, but also to maintain such appliances in a secure condition.

Same—Excessive Verdict—What is not.

3.  Where it appeared from plaintiff's evidence—in sharp conflict with that of defendant—that plaintiff suffered a severe rupture, which permits the intestines to come down into the scrotum on the left side; that he sustained an injury to the back, which affected the nerves branching off from the lower portion of the spinal column; that this injury was of such severity that there was discoloration and swelling on the back at the time of the trial, more than six months after the injury; and that as a result of such injury plaintiff has been rendered sexually impotent; is very nervous, and has lost much sleep; and that at the time of the accident he was an able-bodied man forty-one years of age, with more than twenty years' experience as a railroad man, was a brakeman and extra conductor earning $115 a month as brakeman, had an expectancy in life of 27 years, has been unable to work since the accident, and that the injury to his nervous system is permanent and will probably be progressive, a verdict for $6,000, *held* not so large as to indicate passion or prejudice on the part of the jury.

[As to what is excessive verdict in action for personal injuries, see note in Ann. Cas. 1913A, 1361.]

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by W. O. Armitage against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for plaintiff, and from an order denying its motion for a new trial, defendant appeals. Affirmed.

*Mr. E. M. Hall* and *Mr. W. S. Hartman,* for Appellant, submitted a brief; *Mr. Hartman* argued the cause orally.

Appellant contends that where the interstate carrier has complied with the rulings and orders of the Interstate Commerce Commission in furnishing and equipping its car with a safe and efficient hand-brake, the only duty then devolving upon it is that of exercising ordinary care to inspect and detect defects in the appliance and remedy the same. We contend that the lower court erred in this holding that the duty devolving upon the carrier was absolute, not only to furnish the appliance prescribed by the commission in the first instance, but to keep it absolutely safe and in good repair, and that a careful examination of the Safety Appliance Acts and the Employers' Liability Act of April 22, 1908, as amended by the Act of April 5, 1910, will disclose that error. It supersedes the entire body of the law in the various states where there has been an injury sustained by an

employee of an interstate carrier while engaged in interstate commerce. The authorities are unanimous in declaring this to be the purpose and effect of the Act whenever the evidence shows the employee engaged in interstate commerce at the time of his injury, even though his action was commenced under some other Act or rule of law. (*Toledo, St. L. & W. R. Co.* v. *Slavin,* 236 U. S. 454, 59 L. Ed. 671, 35 Sup. Ct. Rep. 306; *Melzner* v. *Northern Pac. Ry. Co.,* 46 Mont. 277, 127 Pac. 1002; *State* v. *Harper,* 48 Mont. 456, Ann. Cas. 1915D, 1017, 51 L. R. A. (n. s.) 157, 138 Pac. 495; *Chicago, B. & Q. R. Co.* v. *Miller,* 226 U. S. 513, 57 L. Ed. 323, 33 Sup. Ct. Rep. 155; *Northern Pac. R. Co.* v. *Washington,* 222· U. S. 370, 56 L. Ed. 237, 32 Sup. Ct. Rep. 160; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424, 56 L. Ed. 257, 32 Sup. Ct. Rep. 140; *Oberlin* v. *Oregon W. R. & Nav. Co.,* 71 Or. 177, 142 Pac. 554; *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (n. s.) 44, 1 N. C. C. A. 875; *North Carolina R. Co.* v. *Zachary,* 232 U. S. 248, Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, 9 N. C. C. A. 109; *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 1063, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834.)

In the *Horton Case, supra,* the court unmistakably holds that the cause of action by the Act conferred upon the employee against the carrier is for injuries due to its negligence, and that "the plain effect of these words is to condition the liability upon negligence; and had there been doubt before as to the common-law rule, certainly the Act now limits the responsibility of the company as indicated." Since the decision in the *Horton Case,* the federal supreme court has not had the question involved in this discussion squarely presented to it, but it has decided two cases for personal injuries to employees engaged in interstate commerce, which, though not in point, are interesting enough to be noted in this connection. The first of these is *St. Louis & S. F. R. Co.* v. *Conarty,* 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep. 785; the other is *Great Northern R. Co.* v. *Otos,* 239 U. S. 349, 60 L. Ed. 322, 36 Sup. Ct. Rep. 124, decided December 13,

1915.   In the first of these the contention of counsel that the carrier was liable for all injuries that the defective and unlawful condition of the car in question there directly caused, or contributed to cause, the injured employee, was held not well taken.   In the second it is held that when the carrier has discovered the defective appliance and still uses it in interstate commerce, and an employee is injured by the use of it, there is an absolute liability which cannot be defeated by proof of contributory negligence. *Canadian Northern R. Co.* v. *Senske,* 201 Fed. 637, 120 C. C. A. 65, though not directly in point, is interesting in that it is decided on December 24, 1912, by the circuit court of appeals for the eighth circuit, and, so far as the facts in evidence are concerned, is substantially on all-fours with the case at bar.   There the car had been inspected shortly before the accident at the usual place and in the usual manner, and the defective condition of the handhold had not been disclosed by the inspection. The court held that a directed verdict should have been granted, and that where a carrier had exercised that degree of care which persons of ordinary intelligence and prudence engaged in the same kind of business commonly exercised in like circumstances, there is no actionable negligence.   The same rule of law is quoted with approval in *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Kinsel* v. *North Butte Mining Co.,* 44 Mont. 445–470, 120 Pac. 797; *Westlake* v. *Keating Gold Mining Co.,* 48 Mont. 120–135, 136 Pac. 38.

In the light of the authorities above cited, it would seem that the court below could only have held as it did, on the point in question, by applying the doctrine of *res ipsa loquitur.*   But that doctrine is not applicable to negligence cases arising between master and servant.   (*Canadian Northern Ry. Co.* v. *Senske, supra; Montbriand* v. *Chicago, St. P., M. & O. Ry. Co.,* 191 Fed. 988; *Reed* v. *Norfolk & W. Ry. Co.,* 162 Fed. 750; *Midland Valley R. Co.* v. *Fulgham,* 181 Fed. 91, 104 C. C. A. 151; *Patton* v. *Texas & P. Ry. Co.,* 179 U. S. 658, 45 L. Ed. 361, 21 Sup. Ct. Rep. 275; *Phoenix Printing Co.* v. *Durham,* 32 Okl. 575, 38 L. R. A. (n. s.) 1191, 122 Pac. 708; *Christensen* v. *Ore-*

*gon Short Line R. R. Co.,* 35 Utah, 137, 18 Ann. Cas. 1159, 20
L. R. A. (n. s.) 255, 99 Pac. 676; *Acme Cement Plaster Co.* v.
*Westman,* 20 Wyo. 143, 122 Pac. 89; *Texas & Pac. Ry. Co.* v.
*Barrett,* 166 U. S. 617, 41 L. Ed. 1136, 17 Sup. Ct. Rep. 707;
4 Labatt on Master and Servant, 2d ed., sec. 1600.)

*Mr. C. E. Carlson* and *Messrs. Dunn & Carlson,* for Respond-
ent, submitted a brief; *Mr. C. E. Carlson* argued the cause orally.

The statutes involved are as follows: Act March 2, 1893, Chap.
196, 27 Stats. at Large, 531; Act March 2, 1903, 32 Stats. at
Large, 943; Act April 14, 1910, 36 Stats. at Large, 298, 299.
The foregoing Acts are known as the Safety Appliance Acts:
Act of April 22, 1908, 35 U. S. Stat. 65, known as the Employ-
ers' Liability Act. · It is apparent that running all through these
Acts there has been a definite policy upon the part of Congress
wherever it has required the railroad companies to furnish safe
and efficient appliances for the protection of employees to make
that duty absolute. It was so provided in the Act of 1893 and
the Acts amendatory thereof, and the liability to employees
under these Acts was carefully preserved by Congress under
section 8 of the Employers' Liability Act of 1908, and the same
provision will be found in section 5 of the Employers' Liability
Act of June 11, 1906, being the prior Act which was held uncon-
stitutional. The same policy is evinced in the Act of 1910.
Respondent cites *Seaboard Air Line* v. *Horton,* 233 U. S. 492,
Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup.
Ct. Rep. 635, 8 N. C. C. A. 834. The plaintiff in that case was
injured by the explosion of an unguarded water-gauge upon de-
fendant's locomotive engine. The case arose in North Carolina.
The court had instructed the jury that if the guard was a proper
safety provision for use upon the gauge, and if it was unsafe
without it, the defendant was guilty of negligence. The court
in its opinion laid down the rule that by the passage of the Em-
ployers' Liability Act of 1908 Congress had covered the field of
the liability of master and servant in interstate commerce cases,
and that the rule of liability as applied to that case was fixed

by the provision of that Act—that the instruction was erroneous because it was based upon a state statute which had been superseded by the Act of Congress and that under that Act negligence of the master must be shown in situations such as this particular case. It will be observed that the *Horton Case* did not arise under the Safety Appliance Acts; that no statute of the United States had been passed which by any stretch of the imagination could apply to a water-gauge upon a locomotive. The court says so in its opinion. Counsel intimate that the water-gauge in the *Horton Case* was covered by the Federal Boiler Inspection Act of February 17, 1911 (36 Stats. at Large, 913). The accident in the case occurred on August 4, 1910. The Federal Boiler Inspection Act was passed on February 17, 1911, and did not become effective until July 1, 1911, nearly a year after the accident in the *Horton Case.* (Act Feb. 17, 1911.) It therefore follows that upon the facts in the *Horton Case* the effect of the Employers' Liability Act of 1908, if any, upon the scope and force of the Federal Safety Appliance Acts was not involved in the decision of that case. Had a decision been made upon the question in the *Horton Case,* it would clearly have been *obiter.*

Numerous cases have arisen and been decided in the various courts of the land including the supreme court of the United States, where the plaintiff's cause of action was based both upon the Employers' Liability Act of 1908 and the Safety Appliance Acts. We shall advert to only a few: *Grand Trunk Western R. Co.* v. *Lindsay,* 233 U. S. 42, Ann. Cas. 1914C, 168, 58 L. Ed. 838, 34 Sup. Ct. Rep. 581; *Southern Ry. Co.* v. *Crockett,* 234 U. S. 725, 58 L. Ed. 1564, 34 Sup. Ct. Rep. 897; *American R. Co.* v. *Didricksen,* 227 U. S. 145, 57 L. Ed. 456, 33 Sup. Ct. Rep. 224; *Burho* v. *Minneapolis & St. L. R. Co.,* 121 Minn. 326, 141 N. W. 300; *La Mere* v. *Railway Transfer Co.,* 125 Minn. 159, Ann. Cas. 1915C, 667, 145 N. W. 1068; *Smith* v. *Atlantic Coast Line R. Co.,* 210 Fed. 761, 762, 127 C. C. A. 311; *Parker* v. *Atlantic City R. Co.,* 87 N. J. L. 148, 93 Atl. 574 (action under Safety Appliance Act and Employers' Liability Act—specific defect; automatic coupling. Court holds squarely that Safety Appli-

ance Act applied and that it is negligence *per se* for the couplers to fail to comply at any time.   Case on all-fours with this case) ; *Missouri, K. & T. Ry. Co.* v. *Barrington* (Tex. Civ.), 173 S. W. 595 (defective handhold.   Action under Employers' Liability Act and Safety Appliance Act of April 14, 1910.   Specifically held that the common-law rule does not apply, and the rule of absolute liability under the Safety Appliance Act applies) ; *Missouri, O. & G. Ry. Co.* v. *Plemmons* (Tex. Civ.), 171 S. W. 259 (action under Safety Appliance Act and Employers' Liability Act.   *Held*, duty is absolute) ; *St. Louis & S. F. Ry. Co.* v. *Conarty*, 238 U. S. 243, 59 L. Ed. 1290, 35 Sup. Ct. Rep. 785; *Great Northern Ry. Co.* v. *Otos*, 239 U. S. 349, 60 L. Ed. 322, 36 Sup. Ct. Rep. 124.

The language of the Employers' Liability Act, "by reason of any defect or insufficiency due to its negligence in its cars," *etc.* (sec. 1), includes all species of negligence, and it is held by numerous decisions of the land that the violation of a statute enacted for the protection of a particular class is negligence *per se*.   If it is negligence *per se* it is necessarily negligence within the language of section 1 of the Employers' Liability Act. (*La Mere* v. *Railway Transfer Co., Smith* v. *Atlantic Coast Line R. Co., Grand Trunk W. R. Co.* v. *Lindsay, supra; Chicago, R. I. & P. R. Co.* v. *Brown*, 229 U. S. 317, 57 L. Ed. 1204, 33 Sup. Ct. Rep. 840, 3 N. C. C. A. 826.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On December 2, 1914, the defendant, an interstate carrier, brought its east-bound freight train No. 74 into the yards at Harlowton, placed it upon a side-track, and cut off the locomotive.   It was necessary to hold the cars by means of the hand-brakes, and the plaintiff, head brakeman upon the train, in the discharge of his duties undertook to set the brakes upon car No. 61,981, but the brake mechanism gave way and plaintiff was injured.   He brought this action to recover damages and prevailed in the lower court.   The defendant has appealed from the judg-

ment and from an order denying its motion for a new trial.   The specifications of error are presented in four contentions.

1. It is insisted that there is a variance between the allega-
[1]   tions of negligence and the proof, which amounts to a failure of proof.   It is charged in the complaint that the defendant "negligently, recklessly and carelessly suffered, caused and permitted the said braking appliance, and the chains, mechanisms and fastenings thereon [on car 61,981] to be and become defective, old, battered, worn, out of repair, broken and weak, and made of insufficient and improper material," and that this negligence was the proximate cause of plaintiff's injury. The evidence discloses that the car was equipped with handbrake appliances, consisting, among other things, of the brake staff, wheel, and ratchet, a chain attached to the staff, which passes over a pulley and back under the car to a reach-rod, which in turn is attached to an equalizer lever.   The front end of the reach-rod is bent upward and back, forming a large hook, and the design of the equipment is that the chain shall be fastened to this rod by having the last link placed over the hook.   It is the theory of plaintiff's case, supported by his testimony, that instead of the chain and rod being connected, as they were intended to be, the last link of the chain was not over and about the hook, but was lashed to the underside of it by means of some old, rusty baling wire, and that it was this wire which broke and caused plaintiff's fall and consequent injury.   The wire served the purpose of a connecting link between the chain and reach-rod, and in our opinion is fairly comprehended within the general descriptive terms employed in the complaint.   It is only when a particular claim or defense is unproved in its general scope and meaning that it can be said that there is a failure of proof, or a fatal variance, as it is commonly miscalled.   (Sec. 6587, Rev. Codes.)   The complaint is laboriously prolix, but the rules of pleading and practice are now very liberal.   Section 6585, Revised Codes, provides: "No variance between the allegation in a pleading and the proof is to be deemed material, un-

less it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.''

2. It is contended that the verdict is against the law as declared in the court's instructions 8, 9 and 10.  Instructions 9 and 10 relate to the burden of proof and to the *quantum* of proof necessary to warrant a verdict for the plaintiff.  We are satisfied that there was sufficient evidence to justify a submission of the case to the jury, and that neither of these instructions was disregarded.  Instruction 8 will be considered in connection with the next assignment.

3. This action was brought under the Federal Employers' [2] Liability Act of April 22, 1908 (35 Stats. at Large, 65, Chap. 149), and the Safety Appliance Acts of March 2, 1893 (27 Stats. at Large, 531, Chap. 196), March 2, 1903 (32 Stats. at Large, 943, Chap. 976), and April 14, 1910 (36 Stats. at Large, 298, Chap. 160).  The last-mentioned Act requires that all cars subject to the provisions of the Act must be equipped with ''efficient hand-brakes.''  It is now settled beyond controversy that these Safety Appliance Acts impose upon the carrier an absolute duty (1) to equip its cars with the prescribed appliances, and (2) to maintain such appliances in a secure condition.  (*St. Louis, I. M. & S. Ry. Co. v. Taylor,* 210 U. S. 281, 52 L. Ed. 1061, 28 Sup. Ct. Rep. 616; *Chicago B. & Q. Ry. Co.* v. *United States,* 220 U. S. 559, 55 L. Ed. 582, 31 Sup. Ct. Rep. 612; *Delk* v. *St. Louis & San Francisco R. R. Co.,* 220 U. S. 580, 55 L. Ed. 590, 31 Sup. Ct. Rep. 617; *Texas & Pac. Ry. Co.* v. *Rigsby,* 241 U. S. 33, 60 L. Ed. 874, 36 Sup. Ct. Rep. 482.)

Under instructions of the court, the jury, in response to special interrogatories, found in effect that the reach-rod and chain met the requirements of the Federal Acts and the regulations of the Interstate Commerce Commission, if the chain had been hooked over the end of the rod as intended; and it is now the contention of appellant that it did not violate the law, even though some one wrongfully connected the chain and rod by means of the baling wire which would not withstand the force necessary to set the brakes.  Counsel for appellant epito-

mize this contention as follows: "All that is required is that the brake-rod and chain be constructed according to the design and requirements of the Interstate Commerce Commission, so they can be hooked together in the usual manner for the proper operation of the appliance. * * * The perfect braking appliance did not become inefficient or unsafe because someone went to the trouble of wiring the link on the end of the brake-chain to the hook on the end of the brake-rod."

While no one of the cases cited above involved a state of facts similar to the facts of the case before us, yet, as we understand the construction placed upon the Safety Appliance Acts by those cases, the principle involved in each of them is the same as that presented in this instance. Certainly it could not be contended that if car No. 61,981 had been turned out of the shops with the hand-brake appliances loaded on the car, there would have been a compliance with section 2 of the Act of 1910, even though each component part was in perfect condition. Neither, in our opinion, would the requirements of the Act have been met if the defendant in the first instance, in adjusting these appliances to the car, had deliberately fastened the chain to the rod by means of an old rusty wire which would not withstand the strain necessary to set the brakes. The Act clearly requires that the carrier shall not only furnish the necessary parts of the braking apparatus, but it shall furnish them so properly adjusted and connected that the brake will be efficient in the condition in which the car is turned over to the employee. To make a more concrete application: The absolute duty was imposed upon defendant to furnish this car with the several parts of the hand-braking appliances so securely connected that the brakes could be set with safety in the ordinary routine of a brakeman's duties. If it was necessary to that result that the chain be hooked over the end of the rod, then the duty was imposed upon the carrier to see that such connection was made in the first instance.

As we understand the decisions in the cases above cited, the same high standard of duty is imposed upon the carrier to main-

tain the appliances in a secure condition as is imposed upon it
to furnish the equipment in the first instance; and if this be
correct—and we think it is—then there was imposed upon this
defendant an absolute duty to see that the chain and rod were
connected securely at all times, and its failure to do so con-
stitutes a breach of its statutory duty.

Instruction 8 is couched in language whose meaning is very
obscure; but, assuming that counsel for defendant, who pro-
posed and secured the trial court to give it, understand its
meaning, we adopt their interpretation. In their brief they
say: "Instruction No. 8 told the jury that the Safety Ap-
pliance Laws, or the orders of the Interstate Commerce Com-
mission, did not prescribe the manner of fastening the brake-
chain on to the brake-rod, or what kind of a link or hook should
be used, and that appellant was not bound to select the best or
safest appliance, nor the best method of its operation, and if at
the time of its selection, hooking the chain over the gooseneck
on the end of the rod was generally used in fastening the brake-
rod and chain together, and was reasonably adapted to the pur-
pose, and kept at all times in reasonably safe, efficient and suit-
able condition for the servant to do his work, appellant had
discharged its duty and was not liable." If the instruction
has any meaning or any application to the facts of this case,
it must be held to state that the carrier discharged its duty
under the laws and regulations of the Interstate Commerce
Commission, if it equipped the car with proper hand-braking
appliances, consisting, among other things, of the chain hooked
over the end of the rod, and kept such appliances at all times
in a reasonably safe, efficient and suitable condition for the
servant to do his work. Under the evidence that the proper
method of connecting the chain and rod was by hooking the end
link of the chain over the hook on the rod, the jury must have
understood that the carrier's duty could be discharged only by
providing these parts properly connected and by keeping them
connected in a reasonably safe, efficient and suitable condition
for the servant's use. If this is not the meaning of the instruc-

tion, we are at a loss to understand it. If it is the meaning, then it correctly measures the carrier's duty as stated above, and the verdict is not contrary to it, for the evidence offered by plaintiff discloses that the carrier did not keep the chain and rod connected in a safe, efficient and suitable manner for the servant's use. There is not any evidence that plaintiff connected the rod and chain by means of the wire.

4. It is contended that the verdict for $6,000 is so excessive [3] as to indicate that it was given under the influence of passion and prejudice. That the plaintiff suffered some injury is not disputed, but the extent of the injury is the subject of controversy. That there is a sharp conflict in the evidence upon this question cannot be gainsaid. If the jurors believed the testimony of Drs. Blair, Crabbe, Judd and Willard, their verdict cannot be justified; but they were at liberty to refuse to believe it, and apparently exercised their prerogative accordingly. From the testimony of the plaintiff, his wife, and Dr. Seitz, the jury could draw the legitimate inferences that plaintiff suffered a severe rupture, which permits the intestines to come down into the scrotum on the left side; that he sustained an injury to the back, which affected the nerves branching off from the lower portion of the spinal column; that this injury was of such severity that there was discoloration and swelling on the back at the time of the trial, more than six months after the injury; that as a result of the injury he has been rendered sexually impotent; that he is very nervous and has lost much sleep; that at the time of the accident he was an able-bodied man, forty-one years of age, with more than twenty years' experience as a railroad man, was a brakeman and extra conductor earning $115 per month as a brakeman, had an expectancy in life of twenty-seven years, and had been unable to pursue his work after the accident and up to the time of the trial. There is some evidence also to justify the inference that the injury to his nervous system is permanent and will probably be progressive. While subsequent events may demonstrate that the jurors were exceedingly liberal in their allowance, the amount

54 Mont.—4

of the verdict, in the light of the evidence, is not so large as to shock the conscience, and we do not feel justified in substituting our judgment for that of the jury.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

