12974

LINK v. SEABOARD AIR LINE RAILWAY CO.

(156 S. E., 481)

April, 1929.

Mr. Thomas F. McDow, for appellant,

*Mr. William P. Greene,* for appellant,

*Messrs Price & Poag* and *J. Moore Mars,* for respondent,

September 16, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought under the Federal Employers' Liability Act (45 USCA §§ 51-59) for damages for personal injuries alleged to have been received by the plaintiff while in the employment, as a brakeman, of the defendant railway company. At the time of the alleged injury, both plaintiff and defendant were engaged in interstate commerce. The plaintiff alleges that on January 26, 1927, between 1 and 3 o'clock in the morning, while in the performance of his duties as brakeman, at Belt Junction, Ga., he was seriously and permanently injured in the following manner:

"That the through freight train upon which plaintiff was working was required at the point aforesaid to make some shifting operations in making up said train. That defendant ordered plaintiff to aid in switching some cars upon a sidetrack. That there was a string of cars standing upon said sidetrack containing fifteen cars or more, the end one of which was a L. & N. coal car. That when the engineer endeavored to move said cars, plaintiff observed that the brake was on said L. & N. coal car, thereby making it difficult for the engine to move said cars. It thereupon became plaintiff's duty to release said brake, and in the performance of his duty, he mounted upon the small narrow foot-board at the end of said car and attempted to release said brake. That he inserted his brake stick at the proper place and applied the necessary force to release same, whereupon the said brake released with sudden and great power, knocking the brake stick from plaintiff's hand and he was hurled from his precarious footing upon the narrow board and fell to the ground in front of the moving cars. That a part of said train passed over him, and before said train could be stopped he had sustained terrible and lasting injuries."

The following are some of the particulars in which it is alleged the defendant was negligent:

"* * * In furnishing a brake that was unsafe, dangerous and defective, thereby failing to furnish safe and suitable appliances.

"In furnishing a defective and unsafe brake so arranged that the cogs on the brake and the cogs on the lever could and did catch at the ends thereof instead of setting solidly in the crotch, so that when plaintiff applied his brake stick, the brake suddenly loosened and released with powerful force and threw plaintiff off his balance and caused him to be thrown to the ground.

"In furnishing a defective and unsafe brake, which was covered with a cap, so that the brake, cogs, etc., were concealed and the brakeman, switchman, or other employee who set the brake to hold said car upon the siding could not see whether the brake was set solidly or not.

"In carelessly and negligently setting said brake so that it was not-set safely and securely and when plaintiff applied his brake stick the brake suddenly released with great power and threw plaintiff to the ground.

"In that defendant when said cars were left upon the sidetrack carelessly applied said brake with great and unnecessary force, more than was necessary to hold said cars upon the track, so that when plaintiff applied his brake stick in the awkward position in which he was forced to work, the brake released with great and powerful force, and caused plaintiff standing upon said narrow platform or foot-board, to be thrown to the ground.

"In setting the brake upon said coal car with such great force instead of applying the brakes upon two or more cars scattered along said string of cars.

"In failing to inspect the brake upon said coal car after it had been left upon the sidetrack and before plaintiff was called upon to work thereon in order to ascertain whether or not the brake had been set in such a manner as to endanger the life and limbs of other employees who might be called upon to release the same."

The defendant, answering, denied the material allegations of the complaint, and alleged that the injuries received by the

plaintiff were due solely to his own negligence, and pleaded the defense of assumption of risk.

The case was tried at the April, 1929, term of the Court of Common Pleas for Abbeville County, before Judge H. F. Rice and a jury. The defendant's motions for a nonsuit and for a directed verdict were refused, and the case was submitted to the jury, who found for the plaintiff $15,000.00. From the judgment entered on the verdict the defendant appeals.

While the exceptions are numerous, the questions raised are few, and may be thus stated: (1) Did the Court commit error in refusing the defendant's motion for a directed verdict, made upon the grounds (a) that there was no evidence of actionable negligence, (b) that the negligence of the plaintiff was the sole proximate cause of his injury, and (c) that the plaintiff assumed the risk of the injuries sustained by him? (2) Did the Court err in his charge to the jury?

As to subdivision (a) of the first question, the respondent contends that this is a case to which the Safety Appliance Act applies, and as a distinct violation of that Act was shown by the testimony adduced, the Court was bound to submit the question to the jury.

The appellant contends that, "whether the case be one for negligence at common law, or whether the case be regarded as one founded upon negligence for a violation of the Federal Applicance Act, the burden is upon the plaintiff to show by such evidence as will satisfy the Court that the case should be submitted to the jury," and that "no facts were produced by the respondent going to show that the brake furnished by the appellant in this case was either defective, inefficient, or out of repair, and that plaintiff's own testimony shows that the proximate cause of his injuries was not from any such cause, even if there had been evidence as to such fact."

An examination of the testimony discloses that the plaintiff had been employed as a brakeman by the defendant company for a number of years, and that at the time of his in-

jury he was working on a freight train on a run between Howells, Ga, and Abbeville, S. C., and that his injury occurred while he was engaged in switching operations at Belt Junction, Ga. He testified that, when the train reached Belt Junction, it was "headed in" for the purpose of picking up some cars at that point; that he coupled up the engine to the cars that were next to him and "cut the air in"; and that the flagman, who was back at the crossing, coupled the cars and "cut the air in there," and gave the signal to come out; that plaintiff then threw the switch and signalled the engineer to back up, but it was found that he could not do so, for the reason that the brake on the end car was not released, which hindered the movement or progress of the train; that the end car was a coal car equipped with a patented brake— a hand brake operated by a lever—known as the W. H. Miner brake; that, when he observed the brake was on, he climbed up the side of the car, carrying with him his lantern and brake stick, and stood upon a narrow platform at the end of the car, and attempted to release the brake with his hand, but that it was jambed or set so tight that he could not do so when he pulled the lever; that he then applied his brake stick behind the catch, whereupon the brake was released so suddenly and with such force that he was knocked from the platform to the ground. where he was run over by the train and seriously and permanently injured. He further testified that there was nothing in the rule book of the company prohibiting the use of brake sticks; that all of the brakemen used them, and that their superior officers knew of that practice and made no objection, and that, in attempting to release the brake he was simply doing his duty as a brakeman. He also testified that the brake refused to work because it had not been properly "seated," that is, that it was not "seated" in the cogs covered by the cap, but was on the end of the cogs, and, when set that way, it had a chance to slip, which is what happened in this case; that the brake had been set tighter than was necessary or warranted by the existing situation;

and that there should have been a gradual release, which would have involved no danger.

The defendânt offered expert testimony to the effect that the brake in question was a perfect piece of machinery, would not jamb or get out of order, and could be operated easily and with safety, if properly operated. One of defendant's witnesses, E. F. White, however, testified that he had seen brakes of this kind jamb and get out of condition. It was also testified that the brake had been in use for at least three years, and that it had been inspected shortly before the plaintiff was injured; but it was not made to appear that such insection extended to the mechanism of the brake inclosed in the cap, for the purpose of determining whether such mechanism was in proper working condition.

We have given very careful consideration to all of the testimony in the case. There was evidence tending to show a violation of the Federal Safety Appliance Act; namely, that the brake in question was inefficient or was not properly maintained. On this question the plaintiff was entitled to have the case submitted to the jury, who might have reasonably inferred from the testimony that the release of the brake, in the manner and for the causes described by the plaintiff, was due either to inefficiency of the brake or to a failure on the part of the company to keep it in proper working condition, and that the plaintiff was injured thereby.

The Federal Safety Appliance Act 1910, § 2 (45 USCA § 11) provides:

"It shall be unlawful for any common carrier subject to the provisions of this chapter to haul, or permit to be hauled or used on its line any car subject to the provisions of this chapter not equipped with appliances herein provided for, to wit: All cars must be equipped with secure sill steps and efficient hand brakes. * * *"

It is now settled beyond controversy that the Federal Safety Appliance Act imposes upon the carrier an absolute duty to equip its cars with appliances prescribed in the Act, and to maintain such appliances in a secure condition; and the liability for failure to do so is absolute, regardless of negligence on the part of the defendant or contributory negligence on the part of the plaintiff. *St. Louis, I. M. & S. R. Company v. Taylor,* 210 U. S., 281, 28 S. Ct., 616, 52 L. Ed., 1061; *Chicago, B. & Q. Railway Company v. U. S.,* 220 U. S., 559, 31 S. Ct., 612, 55 L. Ed., 582; *Delk v. Railway Company,* 220 U. S., 580, 31 S. Ct., 617, 55 L. Ed., 590; *Texas & P. R. Company v. Rigsby,* 241 U. S., 33, 36 S. Ct., 482, 486, 60 L. Ed., 874; *San Antonio & A. P. R. Company v. Wagner,* 241 U. S., 476, 36 S. Ct., 626, 60 L. Ed., 1110; *Pennsylvania Railway Company v. Hough,* 88 Ind. App., 601, 161 N. E., 705, 708; *Armitage v. Chicago, M. & St. P. Railway Company,* 54 Mont., 38, 166 P., 301, 303; *Lehigh Valley Railway Company v. Howell* (C. C. A.), 6 F. (2nd), 784, 785.

In the *Howell case, supra,* the Court said:

"The obvious purpose of the law was to provide safety for trainmen by having efficient brakes when they were lawfully and dutifully touched or taken hold of in furtherance of the car's operation. The handling of a brake for the purpose of releasing it was as necessary as setting it. When it failed because of its defect, it proved to be inefficient, and liability attached to the plaintiff in error."

In the *Armitage case* we find:

"The Act clearly requires that the carrier shall not only furnish the necessary parts of the braking apparatus, but it shall furnish them so properly adjusted and connected that the brake will be efficient in the condition in which the car is turned over to the employee. * * * As we understand the decisions in the cases above cited, the same high standard of duty is imposed upon the carrier to maintain the appliances in a secure condition as is imposed upon it to fur-

nish the equipment in the first instance; and if this be correct—and we think it is—then there was imposed upon this defendant an absolute duty to see that the chain and rod were connected securely at all times, and its failure to do so constitutes a breach of its statutory duty."

In the *Hough case, supra:*

"Appellant's contention that the Court erred in overruling its demurrer to the complaint is based upon substantially the same reasoning as presented by it in its contention that the Court erred in overruling its motion to make more specific. It says that it does not appear by the complaint that appellant was guilty of any negligence in failing to equip the car with efficient brakes in the first instance, or in hauling it after the ratchet became loose and would not hold; that it does not appear that appellant was guilty of any negligence with reference to the ratchet becoming loose and failing to hold; that it does not aver in what the negligence of the defendant consisted; that the ratchet had been loose or inefficient for any length of time; or that appellant was negligent in failing to inspect it. These contentions of appellant are fully met by again asserting that it was the absolute duty of appellant under the Federal Safety Appliance Act (45 U. S. C. A., Sections 11–16; Comp. St., Sections 8618–8619, 8621–8623) not only properly to equip its cars with efficient hand brakes, but to maintain them as such, and there is no provision in the statute for any excuse for not so doing."

From the foregoing, it is clear that the defendant was not entitled to a directed verdict on the ground stated in subdivision (a).

As to subdivision (b), the appellant contends that the plaintiff used bad judgment in the manner of performing his duty, and that his injuries were due solely to his own negligence in releasing the brake. What we have already said disposes of this contention. See, also, *Chicago, R. I. & P. Railway Company v. Brown*, 229 U. S., 317, 33 S. Ct., 840, 57 L. Ed., 1204.

As to subdivision (c), the Court could not have directed a verdict on the ground that the plaintiff assumed the risk. There was testimony, as we have said, tending to establish facts which, if proved, would bring the case within the Federal Safety Appliance Act. Section 8 of that Act (45 U. S. C. A. Section 7) provides:

"Any employee of any common carrier engaged in interstate commerce by railroad who may be injured by any locomotive, car, or train in use contrary to the provision of this chapter shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge." Act Cong. March 2, 1893, C., 196, Section 8, 27 Stat., 532.

In *Texas & P. R. Company v. Rigsby, supra,* with regard to this question, the Court said:

"Of course, the employee's knowledge of the defect does not bar his suit, for by Section 8 of the Act of 1893 an employee injured by any car in use contrary to the provisions of the Act is not to be deemed to have assumed the risk, although continuing in the employment of the carrier after the unlawful use of the car has been brought to his knowledge; and by Section 5 of the Act of 1910 [45 U. S. C. A., Section 14] the provisions of the 1893 Act are made applicable to it, with a qualification that does not affect remedial actions by employees."

As to the second question, the appellant complains that the Court erred in charging plaintiff's second request, to the effect that, if plaintiff was injured, in whole or in part, through the negligence of the agents or employees of the defendant, it would be the duty of the jury to award him adequate damages for such injury. As appellant did not argue his exception, we may properly assume that it was abandoned. However, we have considered the question raised, and find no error. There was testimony which justified the charge; and the contention that the respondent as-

sumed the risk of any injuries resulting from the negligent acts of other employees of the appellant is disposed of by what we have already said.

: The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, and CARTER, and MR. ACTING ASSOCIATE JUSTICE GRAYDON concur.

MR. CHIEF JUSTICE WATTS did not participate.