[Civ. No. 4611.   Third Appellate District.—September 28, 1932.]

MAMIE M. BALLARD, Administratrix, etc., Respondent, v. SACRAMENTO NORTHERN RAILWAY COMPANY (a Corporation), Appellant.

J. Hampton Hoge, Hinsdale, Otis & Johnson, R. W. Jennings and Loyd E. Hewitt for Appellant.

Thomas F. McCue and Clifton Hildebrand for Respondent.

PLUMMER, J.—The plaintiff had judgment based upon the second cause of action set out in her complaint, from which judgment the defendant appeals. The second cause of action in the complaint sets forth, after reciting preliminary matters showing the right of the plaintiff to maintain this action, that Charles K. Ballard was, on and prior to the eleventh day of November, 1930, a brakeman regularly employed by the defendant. That on the eleventh day of November, 1930, at Marysville, Yuba County, said Charles K. Ballard came to his death by being thrown from the top of a freight-car then and there being operated by the defendant. That the direct and proximate result of the death of Charles K. Ballard was the hauling, and permitting to be hauled and used on its railway line, a certain freight-car known as a "gondola car", that was not equipped with efficient hand-brakes; that the hand-brake on said car had a defective and crooked brake-shaft; that by reason of the defect in the brake-shaft the brake on said car could not be set with safety; that when the wheel at the top of the brake-shaft was turned, the crook in the shaft would cause the wheel to flare up on one side and down on the other, thereby causing the deceased to lose his balance and to fall from the top of the car to, and beneath the wheels thereof, which instantly caused his death; that the defendant was operating said car with a defective and inefficient brake that could not be set with safety, contrary to the terms and provisions of the Federal Safety Appliance Act. The section of the Federal Safety Appliance Act and the rules and regulations of the interstate commerce promulgated in pursuance thereof, required that the rim or perimeter of the brake wheel on the top of the brake-shaft should, on gondola cars, have a clearance of at least four inches above the top of the

car. The evidence in this case showed a violation of this rule, and that there was not such clearance.

The photographic exhibits in this case show that in order to set the brake on a gondola car, the brakeman must take a position upon a narrow footboard on the end of the car, placing his foot against the "dog" or "pawl", give the brake-wheel a turn with his hands, and with one of his feet push the "dog" or "pawl" into the ratchet which holds the brake as set. The footboard upon which the brakeman is required to stand is about midway between the top of the car and the bottom of the sill of the framework upon which the car is built. The photograph shows that this footboard is very narrow, and only of sufficient length to afford standing room for the brakeman operating the brake. Whenever it is desired to set the brake more securely than can be done by simply using the wheel at the top of the brake-shaft, a club is inserted in the wheel, placing one end against the shaft as a fulcrum, and pressing the club against a spoke of the wheel. The length of the club reaching out beyond the circumference of the wheel gives the brakeman added power in setting the brake.

It appears from the testimony that this manner of setting brakes is required whenever the car is stopped upon a grade or incline, such that the brake cannot be efficiently operated from the power afforded by the simple use of the wheel.

The record shows that at the time of the accident the appellant was, and had, prior thereto maintained a railway of interstate commerce, or a railway over which interstate commerce was carried. As heretofore stated the deceased was employed in the capacity of a brakeman. On the day in question the crew of which the deceased was a member was engaged in backing a string of cars propelled by an electric motor, for the purpose of setting out two cars at a place known as the "Sandpit" in Marysville. At the place where the cars were to be spotted the grade or incline of the track was such that in order to set the brakes sufficiently tight for them to remain stationary upon the grade, it was necessary for the deceased to use a brake club. The gondola car to which we have referred was one of the cars so spotted and the car upon which the deceased was engaged in setting the brakes at the time he met with his death.

This car was known as number 4467, and was being spotted for the purpose of being loaded with sand.

The testimony is conflicting as to the flare of the brake-wheel, that is, as to the difference between a horizontal plane and the plane described by the wheel in its revolutions. Some of the witnesses testified that there was a variation of two inches. One witness, who apparently made a minute examination of the wheel and the brake-shaft testified that there was a difference of six inches between the higher and the lower side of the wheel as it was turned upon the bent shaft.

It is admitted in the record that the brake-wheel did not have the clearance prescribed by the rules promulgated by the Interstate Commerce Commission governing braking appliances on gondola cars. This negligence on the part of the defendant, while not controverted upon this appeal, is held by the appellant not to have been the efficient cause of the accident.

On the part of the respondent it is contended that the braking appliance which we have described was not only violative of the Federal Safety Appliance Act, but that it could not be efficiently operated safely. The question of whether the braking appliance could or could not be operated efficiently can only be resolved by taking into consideration the conditions surrounding the location of the car at the time when it became necessary to operate the appliance, that is, whether the condition of the braking appliance was such that it could be safely operated by the use of what is called a "brakeman's club", in order to set the brakes sufficiently tight to hold the car in place while being loaded. The respondent contends that the flare of the wheel giving, as one witness said, a drop of six inches in its revolutions, could not be safely operated when a brakeman was using a club, as the flare in the wheel or the variation from a horizontal plane in its revolutions was such as to create the hazard of the club slipping on the brake-shaft and endangering the person of the brakeman. The photograph to which we have referred shows that the operator of the brake had a very narrow footboard upon which to stand, and that any defect which would cause the brake-club to have a tendency to slip, might very readily imperil the person of the operator. True, if the operator of the brake had a very tight hold

of the wheel with his right hand, while he was pushing the brake-club with his left (this being the manner of operation), it might be possible, even though the brake-club slipped and the operator's balance on the footboard was disturbed, he might save himself by holding to the brake-wheel with his right hand. Contrariwise, if the full force and strength of his body were used in pressure upon the brake-club in order to securely set the brakes, under the conditions presented it is reasonable to infer that any slight defect in the mechanism or a defect such as we have described might reasonably and probably would result in injury to the operator.

It may here be said that the photograph of the car in question, although very small, being about 2½x4½ inches, clearly shows the slant of the brake-wheel at the top of the shaft.

It is not simply a question of whether the brake in this case was efficient. In order to comply with the Safety Appliance Act and the rules promulgated in pursuance thereof, it was necessary that it could be operated with safety. The deceased in this instance had succeeded in setting the brake so as to hold the car in place. The question before the jury was really whether the appliance was such that the brakes could be safely set in the ordinary routine of a brakeman's duty, and as we have seen, in the ordinary routine of a brakeman's duty, whenever the cars were to be held upon a grade or an incline in the track, it was a part of the brakeman's duty, and the custom of brakemen to use the auxiliary means of a brakeman's club in order to exercise greater power in setting the brakes. This would necessitate a wheel equipment on the top of the brake-shaft revolving upon a plane so limited in its variations as not to create the hazard of a slipping club. It requires no great mechanical knowledge to appreciate the extent to which this hazard would be created by a wheel which rose and fell a few inches in its revolutions. The jury had a right to take all these conditions and circumstances, and the up and down variation of the force that the brakeman exerted upon the club that would be caused by its rise and fall in the revolution of the brake-wheel, into consideration.

The testimony of the one witness to the accident may be summarized as follows: An ordinary man could not set

the brake with his hands, enough to hold the car on the grade. It is the regular practice and necessary to use a brake-club so that the brake will hold on a grade. The deceased was applying the brake on the gondola car; he was standing on the footboard at the end of the car. "I saw him make two efforts to set the brake; I saw him place the brake-club, taking hold of it and apparently using his strength in setting the brake; I saw him tip back and fall out of sight between the cars; his hands went up at the time, and the brake-club went out of his left hand; the deceased fell on the north side of the track and the wheels of the gondola car ran over his body, killing him instantly."

As against this testimony and the circumstances which we have set forth herein, it is contended by the appellant that if the brake-club slipped or was caused to slip, the deceased would have fallen forward, and therefore the defendant must have met his death from some other cause, dizziness being suggested, based upon the circumstance that a witness testified that a number of years previously the deceased had a dizzy spell. We see no compelling force in this contention. It is a matter of common knowledge, as everyone who has ever set a brake on a freight-car, or observed a brakeman operating the same knows, that the operator places his feet near the ratchet on the brake-shaft into which the "pawl" is forced to retain the pressure of the brake as it is being set, takes hold of the wheel with his hands, and in order to exert his full strength, throws the major portion of his body away from the wheel and brake-shaft, describing an arc, so that if a perpendicular line were drawn from the instep of his feet to the top of his head, practically all of the body of the operator, in fact, all except the arms and hands, would be from instead of toward the brake-wheel side of that perpendicular line. This is in order to exercise the operator's full strength, aided by the weight of his body, in setting the brake. In doing this the swing of the body would describe an arc parallel with the top of the car.

The jury had before it a photograph of the car, and could easily visualize what we have just stated, and hence could not escape the conclusion that the law of gravity would carry the body downward with a slight side motion, just as occurred in this case, so that the body would be thrown

prone across the tracks. We think the jury had a right to infer that the brake-club slipped, for the reasons which we have stated, and that the added weight of the body of deceased (the testimony showing his weight to have been between 185 and 190 pounds), caused the grasp of his right hand upon the brake-wheel to be loosened, and that the fall did not result from any attack of dizziness or physical infirmity on the part of the deceased.

Supporting its theory that the facts disclosed are insufficient to support the judgment, appellant cites the cases of *Collins* v. *Great Northern Ry. Co.*, 181 Minn. 125 [231 N. W. 797], *Nealis* v. *Chicago, R. I. & P. Ry. Co.*, 173 Minn. 587 [218 N. W. 125], and *Bruckman* v. *Chicago, St. P., M. & O. Ry. Co.*, 110 Minn. 308 [125 N. W. 263]. The differences in the facts of these cases we think readily distinguish them, and show their inapplicability to the circumstances disclosed by the record presented for our review.

In the Collins case the plaintiff testified that he was riding on the front end of the car traveling east; that he had the brake-club in the wheel, and had tightened it up as much as he could; that he had his right foot against the top of the grab-iron; that he put his weight, all he could, against the club, and the car began to slow down; that the car slowed down so that it was going about eight or ten miles an hour when it came in contact with other cars to which it was to be coupled; that normally it should have been going about two or four miles per hour; that he did not reduce the speed more because the brakes would not work; that the brake-wheel just gave or went around suddenly, and that he went down with it; he could not say just how he went down. The record in the Collins case shows neither defect nor inefficiency in the brake mechanism. The opinion of the court contains the following: "After the accident the brakes were found tightly set; they then worked properly. Plaintiff has no substantive proof to the contrary. The claim that the brakes were inefficient must be proved; it cannot rest on theory alone. The record leaves the cause of the accident uncertain. The most favorable view for plaintiff is that it rests on conjecture as to whether it was inefficient brakes, the fault of plaintiff, an unaccountable or unavoidable accident. The brake-club may have slipped.

The cause of the accident must be proved. Unless the cause is shown affirmatively, there can be no recovery.''

It will be observed that while the court says that the brake-club may have slipped, it does not set forth any facts or circumstances such as we find existing in the case at bar, from which the jury might very reasonably infer that the brake-club was caused to slip. There is nothing in the Collins case showing that the brake-wheel had other than a revolution upon an invariable plane. There is nothing in the Collins case showing failure on the part of the defendant to comply strictly with the Federal Safety Appliance Act, and from which failure or defect in the appliance, an inference might be drawn that the accident resulted therefrom.

The record in the case of *Nealis* v. *Chicago, etc., supra,* shows that the deceased was seen near the defective brake-wheel. After the accident it was found that the brake was partly wound up. The brake-staff was bent about two inches above the sill, and was thereby thrown an inch or two out of line; bent perhaps 10 or 15 degrees, and wobbled a little. It was claimed by the plaintiff in that case that the chain would pile up and slip off the shaft, having a tendency to throw the operator off his balance. The court in its opinion spoke as follows: ''We will assume that the brake was defective, and that its defective condition was negligence. Plaintiff's case rests upon circumstantial evidence to establish a causal connection between such negligence and the accident. Such proof is not established when the evidence is merely consistent with the plaintiff's theory of how the accident occurred. The rule is that circumstantial evidence in such a case must furnish a reasonable basis for the inference by the jury of the ultimate fact that the negligence was the cause of the accident. The burden is upon the plaintiff to show that the causal connection is fairly and reasonably inferable from the facts and circumstances actually disclosed by the evidence. The evidence must justify an inference that the accident resulted from such negligence, rather than from some other cause.'' (Citing a number of cases.) . Here again the record fails to disclose that the deceased was actually operating the brake, and that the mechanism was defective or in anywise calculated to imperil the person of the operator. In the instant case the defective appliance and the deceased are found to have been

working together, and the inference is fairly logical that the result was brought about just as we have heretofore stated.

In the Bruckman case, *supra,* the evidence shows that the deceased was seen approaching a gondola car and reached for the ladder, and the lantern which the deceased was holding was carried up the ladder to the top of the car, and shortly afterward was seen to fall to the ground. The brake appliance on the gondola car was found to be defective. After the accident the brake was partly set. After the gondola car and others had passed by the witnesses, the deceased was found lying across an adjoining track, face downward, over which a passenger train had passed. The body had been dragged some 60 or 70 feet. The court held that there was no causal connection shown to exist between the defective brake appliances and the death of the brakeman.

Not having been seen upon the defective footboard necessary to be occupied in operating the brake, it could not be said that such defect had anything to do with the accident. The connecting links were found to be absent in the Bruckman case, but we may add that the language of the court shows it to have been a border-line case and not of sufficient convincing power to be controlling here.

We think the facts of the instant case as we have reviewed them, especially when taken in connection with the law of this state, that the deceased was presumed to have exercised due care for his own safety, sufficiently disclose the causal connection between the defective appliance and the death of the deceased, and that the judgment should be affirmed, unless the trial court had no jurisdiction, or other errors are shown by the record.

In this particular it is urged that the trial court had no jurisdiction, and also that prejudicial error was committed by giving an instruction on the subject of contributory negligence. Section 56 of title 45, 45 U. S. C. A., page 515, so far as applicable here, reads as follows: "The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states, and no case arising under this chapter and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

Referring to section XI, 45 U. S. C. A., page 59, being a portion of the acts involved herein, the rule appears to be well settled that it is not necessary that either the employee or the company, at the time of the injury, be actually engaged in interstate commerce. All that is necessary is that the carrier conducts and carries over its railway, interstate traffic. (*Stearns* v. *Chicago etc. Ry. Co.,* 166 Iowa, 566 [148 N. W. 125]; *Texas & P. Ry. Co.* v. *Rigsby,* 141 U. S. 33 [60 L. Ed. 874, 875, 36 Sup. Ct. Rep. 482]; *St. Louis & S. W. Ry. Co. of Texas* v. *Smith,* 254 Fed. 581; *Texas & Pac. Ry. Co.* v. *Sproule,* (Tex. Civ. App.) 202 S. W. 985.) Other cases might be cited, but the foregoing appear to be sufficient.

The contention that the Workmen's Compensation Act applies, we think is without merit. In *Smithson, etc.,* v. *Atchison, T. & S. F. Ry. Co.,* 174 Cal. 148 [162 Pac. 111], in speaking of the Federal Employees' Liability Act, which corresponds in force and effect with the Safety Appliance Act, the Supreme Court said, quoting from the syllabus: "In actions brought in state courts, under the provisions of the Federal Employees Liability Act approved April 22, 1908, the decisions of the Supreme Court of the United States are controlling in the construction of the act." Here, jurisdiction to try cases based upon the Federal Safety Appliance Act is vested in district and superior courts. By subdivision "C" of section 69 of the Workmen's Compensation Act, it is expressly provided that where interstate commerce questions are presented, resort to the courts is not prohibited. We do not need to review the testimony showing that interstate commerce is carried on over the lines of the defendant, further than to state it is sufficient to establish such character, and the record shows that the defendant practically admitted such character in the trial court. Under the Safety Appliance Act, it is the absolute duty of the carrier to maintain the several parts of the braking appliances in such condition that they may be safely operated. (*Armitage* v. *Chicago, M. & St. P. Ry. Co.,* 54 Mont. 38 [166 Pac. 301]; *LaMere* v. *Railway Transfer Co.,* 125 Minn. 159 [Ann. Cas. 1915C, 667, 145 N. W. 1058].)

In the case of *Lockhart* v. *Southern Pac. Co.,* 91 Cal. App. 770 [267 Pac. 591], the Safety Appliance Act was not

involved. The cause was prosecuted under the Federal Employees' Liability Act, and it was not shown that the car upon which the injured workman was engaged was, or ever had been employed in interstate commerce. The same may be said of the case of *Johnson* v. *Southern Pac. Co.,* 199 Cal. 126 [49 A. L. R. 1323, 248 Pac. 501].

We do not need to cite the long list of authorities holding that violation of the Safety Appliance Act constitutes negligence. One case only needs to be referred to: *Spokane & Inland Ry. Co.* v. *Campbell,* 241 U. S., at page 509 [60 L. Ed. 1125, 36 Sup. Ct. Rep. 683].

At the request of the plaintiff the court instructed the jury that contributory negligence or assumption of risk could not avail the defendant in actions based upon violation of the Safety Appliance Act. This the appellant urges as prejudicial error. Irrespective of the law on this subject, which we believe to be adverse to the appellant's contention, the instruction of the court must be held harmless. There is not a scintilla of evidence set forth in the record indicating contributory negligence, or showing that the deceased committed a single negligent act. Contributory negligence, where it applies, is a matter requiring proof by the party relying thereon, unless the testimony of the plaintiff tenders that issue. The only evidence submitted on the part of the appellant was concerning the condition of the braking appliance. No attempt was made to show any facts indicating negligence on the part of the deceased.

Our attention is called to the case of *Minneapolis etc. Ry. Co.* v. *Popplar,* 237 U. S. 369 [59 L. Ed. 1000, 35 Sup. Ct. Rep. 609], where a reference is made in the opinion to the former case of *Schlemmer* v. *Buffalo etc. Ry. Co.,* 220 U. S. 598 [55 L. Ed. 596, 31 Sup. Ct. Rep. 561], where it is said the defense of contributory negligence was not dealt with by the statute, and that the federal statute touched the duty of the master at a single point and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the state. Later decisions, however, hold applicable section 53 of title 45 (see 45 U. S. C. A. 379), which reads in part as follows: "Provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier

of any statute enacted for the safety of employees, contributed to the injury or death of the employee.'' Again, section 54, *supra,* holds that where there is a violation of any statute enacted for the safety of employees, assumption of risk is not a defense.

In *Spokane & Inland Ry. Co.* v. *Campbell, supra,* the Supreme Court of the United States distinctly holds that under the Safety Appliance Act, recovery may be had even when there is a concurrence of a violation of the act and negligence of the employee. This case refers to the case of *San Antonio & A. P. Ry. Co.* v. *Wagner,* 241 U. S. 476 [60 L. Ed. 1110, 36 Sup. Ct. Rep. 626], where it is held that a violation of the Safety Appliance Act is negligence in itself.

In *Union Pacific R. R. Co.* v. *Huxoll,* 245 U. S. 535 [62 L. Ed. 455, 38 Sup. Ct. Rep. 187], it was held that the concurrent negligence of the deceased did not prevent recovery based upon the violation of the Safety Appliance Act.

In *LaMere* v. *Railway Transfer Co., supra,* it was held that the defense of contributory negligence did not bar recovery, based upon the federal employees liability and safety appliance acts.

In *Southern Pac. Co.* v. *Thomas,* 21 Ariz. 355 [188 Pac. 268], the Supreme Court of Arizona held (quoting from the syllabus) : ''Where the carrier failed to have proper couplers on cars, as required by the Federal Safety Appliance Act, the brakeman's contributory negligence in going between the cars without giving the proper signal was no defense.''

In *Thayer* v. *Denver & R. G. Co.,* 25 N. M. 559 [185 Pac. 542, 544], we find the following : ''The action being based upon a claim violative of the Safety Appliance Act, the defense of the assumption of risk and contributory negligence are eliminated.'' (Citing sections of the act and the cases to which we have heretofore referred.)

The judgment is affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 28, 1932, and the following opinion then rendered thereon:

THE COURT.—The appellant, upon petition for rehearing, challenges the accuracy of the following statement contained in the opinion of this court heretofore handed down in this cause, to wit: "There is not a scintilla of evidence set forth in the record indicating contributory negligence, or showing that the deceased committed a single negligent act. Contributory negligence, where it applies, is a matter requiring proof by the party relying thereon, unless the testimony of the plaintiff tenders that issue. The only evidence submitted on the part of the appellant was concerning the condition of the braking appliance. No attempt was made to show any facts indicating negligence on the part of the deceased."

The accuracy of the foregoing statement may be best determined by setting forth all the testimony in the case relating to this subject and answering the contention that the deceased, as a reasonable person, should have become aware of the condition of the brake before he attempted to operate the same.

The record shows that prior to the moving of car 4467, other portions of the train were backed down and coupled thereto. Mr. Woodard, a witness for the appellant, testified as to the circumstances then occurring: "Q. Now, did Mr. Ballard get on that car when you backed down to it? A. When the coupling was made he crawled up on the car; he got up on the brake-step here. Q. Do you know whether or not he took the brake off the car at that time? A. He did. Q. Then the two cars were moved in a westerly direction? A. Yes, sir."

Questioned as to how fast the train was moving at the time of the accident, the witness replied: "About 3 to 5 miles an hour. Q. Did you see him put on the brakewheel by operation of hand movement only? A. Yes, sir. Q. And what was the next operation that you saw? A. He took his club out and held it onto the brake, and looked over his shoulder to see if the cars were in the proper place he was expected to spot them. Then he inserted the club, strained on it and went over backward; his club and hands went up. Q. Did you notice whether or not Mr. Ballard retained his club in his left hand for a little while? A. He did. Q. Did you immediately make an examination of the wheel and shaft? A. I did. I tried the brake, looked at

the chain and looked at the wheel to see if it was broken. Q. Did you find anything unusual about it? A. Nothing. Q. Did you observe any bend of any kind in the shaft? A. I did not. Q. Either above or below the brake-plate? A. I did not. Q. You made an examination of the entire brake? A. I did.''

The witness Jerrell, appearing on behalf of appellant, testified as follows: "Q. On how many times during that day did you operate that brake? A. One time. Q. Did you notice anything at all unusual in its operation? A. Not at all. Q. Now, was there any flare in the wheel? A. Yes, a slight flare. Q. What would be the greatest amount of a flare in inches? A. About 2 inches.''

Mr. Hilton, a witness appearing for the appellant, testified as follows (after stating that he operated the brake): "Q. Did you notice any bend or list in the brake shaft? A. Yes, sir. Q. Did that affect your operation of the wheel in the ordinary performance of your duty as a brakeman? A. No, sir. Q. Did you notice any flare in the wheel? A. No, sir. Q. Any variation of the wheel from a horizontal plane? A. No, sir. Q. Did you see him (referring to Bannon) with Mr. Jacobs on that day? A. I did.'' The witness testified that he was present at the time pictures were being taken of the car, and testified as follows: "Q. What was he doing (referring to Bannon?) A. Examining this 'Gondola' and taking pictures of it. Q. Did he point out there to you any defect in the staff? A. Yes, sir. Q. Where did he point out that defect? A. Right at the place the staff was bent; and asked me if I could see a bend in the staff there. Q. What did you reply? A. That I could. Q. What, if anything, was the extent of the bend? A. It was very small and not noticeable unless someone would call your attention to it particularly. Q. Did he call your attention to any flare in the wheel? A. No, sir.''

Mr. Bryan, car inspector for appellant, testified as follows: "Q. You inspected the braking apparatus on this car at that time? A. Yes, sir. Q. In what condition did you find it? A. All right. Q. Subsequent to Mr. Ballard's death did you inspect the braking apparatus on car 4467? A. After his death, yes, sir, I did. Q. How soon after his death? A. Well, it was, I imagine it would not be over 10 or 15 minutes, or 20. Q. Did you measure the distance

between the wheel and the top of the car? A. Later in the evening. Q. Did you measure the distance between the lowest point in the wheel and the top of the car? A. Yes, as best I could judge, I did. Q. With a rule? A. Yes, sir. Q. What was the result of your measurements? A. There was more than 4 inches clearance.''

On cross-examination the witness further testified: ''Q. Did the brake wheel run on a perfect plane? A. No, there was a little tilt in the wheel, but not much. Q. How much? A. I don't believe there was more than half an inch.''

The witness Keener, called by the appellant, testified that he was car inspector for the appellant, and answered the following question: ''Q. Did you observe any bend in the staff at all? A. No, sir. Q. At none of these examinations did you observe any bend at all? A. No, sir. Q. Below the plate? A. No, sir. Q. Did you examine it with that idea? A. Yes, sir; that is my business.''

There is no testimony in the record showing that the deceased had ever set the brake on gondola car 4467, under conditions where it was necessary for him to use a brake-stick in order to hold the car in place; or that he had had any opportunity whatever to detect the defect in the braking appliances, save and except that he unloosened the brake before the car was moved up to the place where it was to be spotted. This, of course, furnishes no basis whatever for the conclusion that he was chargeable with the unsafe condition of the brake when it had to be operated by means of a brake-stick.

It is apparent from the testimony which we have quoted, and which is all the testimony in the case relating to the subject, that it does not show a single contributory act on the part of the deceased. In argument it is sought to charge the deceased with knowledge of defects which appellant's own witnesses claim either did not exist, or were not noticeable unless one's attention was called particularly thereto. The fact that the deceased's hands went up just prior to his fall beneath the cars is only an evidence of a movement made by the deceased after something had occurred which caused him to lose his balance and fall from the position theretofore occupied by him upon the narrow brake step.

The testimony in the case as shown by the foregoing confirms us in the opinion that there is no basis for the charge

of contributory negligence, and that any argument based thereon is without foundation.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 21, 1932.