[L. A. No. 15364. In Bank.—August 5, 1936.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Plaintiff, v. JUNE KNAPP et al., Defendants; THOMAS HYE, Defendant, Cross-Complainant and Appellant, v. HOWARD TOMLINSON, Defendant, Cross-Complainant and Respondent.

Clayton L. Howland and Benjamin F. Chipkin for Appellant.

George L. Hampton for Respondent.

SEAWELL, J.—This is an action in interpleader. Before trial the City of Los Angeles dismissed an eminent domain suit which it had brought to condemn land and water rights in Inyo County. Upon dismissal and abandonment of said suit by the city, the defendants therein became entitled to an award of costs and disbursements, including reasonable attorneys' fees. (Sec. 1255a, Code Civ. Proc.) Accordingly, the court rendered judgment in favor of defendants Emmett Warnell Knapp and June Knapp and against the City of Los Angeles for $5,923 for costs, disbursements and attorneys' fees. Of the total award, $4,200 was allowed for attorneys' fees. Thereafter various persons claiming as assignees of the Knapps, or by virtue of garnishments levied in actions brought against them, made demand on the city for the amount due from it by the judgment in the condemnation suit. The city brought this suit in interpleader, and deposited in court the sum of $5,923, plus interest thereon to the date of such deposit in the amount of $207.30. By stipulation of the various defendants who made claims to the fund, all except $875 was distributed. Respondent Tomlinson and appellant Hye both claim this sum.

Hye claims under an assignment executed by the Knapps on July 20, 1931, wherein the Knapps assigned to him any and all moneys up to the sum of $8,500 which they should be awarded as a result of the condemnation suit. At this time the city had not announced its intention to abandon the proceeding. Hye testified that Knapp was indebted to him for money loaned. Subsequent to the dismissal of the suit by the city and the award of costs to the Knapps, they executed another assignment to Hye, whereby they transferred all their right, title and interest in the judgment for costs in the sum of $5,923. In the instant action in interpleader, Mr. and Mrs. Knapp filed an answer praying that the court render judgment in favor of Hye for the full amount due from the city.

Respondent Tomlinson claims as transferee of the rights of attorney W. W. Middlecoff in the judgment for the Knapps rendered in the condemnation suit. The court below found that in January, 1932, Middlecoff was employed by the Knapps to act for them as counsel in the condemnation proceeding, in collaboration with George T. Warren, who

had already been employed as counsel. On August 20, 1932, after the city had indicated that it would abandon the condemnation suit, but before actual dismissal thereof, Middlecoff and Knapp, for himself and as agent for his wife, executed the following instrument:

"Total Atty fee in water suit to be divided ¾ to Knapp, or his assignee, ¼ to W. W. Middlecoff. All costs to Knapp.

"W. W. MIDDLECOFF
"E. KNAPP

"Dated: August 20, 1932."

In his answer to the complaint in interpleader Tomlinson, transferee of the rights of Middlecoff in the judgment rendered in the condemnation suit, contended that this instrument constituted an assignment to Middlecoff of one-fourth of the total amount of $4,200 subsequently allowed to the Knapps as attorney's fees, that is, an assignment of $1,050. Tomlinson claimed that although the assignment to Middlecoff was subsequent in time, it was taken without notice of the prior Hye assignment, and notice thereof was given to the debtor, City of Los Angeles, before it received notice of the Hye assignment, and the court so found. ■ As between two *bona fide* assignees for value the one who first gives notice to the debtor acquires priority. (*Smitton* v. *McCullough*, 182 Cal. 530 [189 Pac. 686]; *Widenmann* v. *Weniger*, 164 Cal. 667 [130 Pac. 421]; *Graham Paper Co.* v. *Pembroke*, 124 Cal. 117 [56 Pac. 627, 71 Am. St. Rep. 26, 44 L. R. A. 632]; 3 Cal. Jur. 283; 15 Cal. Jur. 251.) Tomlinson waived his claim to all part of the fund paid into court in excess of $875 by stipulation in the trial court with the other defendants in the interpleader action to distribution of all except that sum. The court below first announced that judgment would be rendered for Hye, but before findings and judgment were signed granted Tomlinson's motion to reopen the case for further evidence. After the case had been closed, the court reopened it again on its own motion, and subsequently awarded the sum of $875 to Tomlinson.

■ Appellant Hye contends that the above instrument executed by Knapp and Middlecoff contemplated an unlawful splitting of attorneys' fees with Knapp, a layman, and therefore Middlecoff and Tomlinson should have no rights

by virtue of the instrument. This contention would also preclude appellant Hye from receiving any portion of the fund which represented the allowance for attorneys' fees, since Hye also is a layman. The only reasonable interpretation is that the reservation by Knapp of three-fourths of the total amount to be awarded as attorneys' fees was made to enable him to compensate the other attorneys who had represented the Knapps in the condemnation suit.

The judgment of dismissal of the condemnation suit and for payment to the Knapps of $5,923 for their costs and disbursements was rendered on October 3, 1932. The cost bill as allowed by the court contained an item of $4,200 for attorneys' fees, including $3,500 as the reasonable value of legal services of George T. Warren, $500 as the value of services rendered by attorney Middlecoff, and $200 for the legal services of Robert Richards. Attorney Warren was named as a party defendant in the action in interpleader, the city alleging that he had filed a claim for $3,500 against the judgment in favor of the Knapps. Presumably he was paid pursuant to the stipulation made between the various parties to the within interpleader action for distribution of all except $875 of the $5,923, plus interest, paid into court by the city. No question as to his rights or as to those of attorney Richards are involved on this appeal.

Appellant Hye has not made the stipulation for distribution of all except $875 of the fund deposited in court, or the judgment entered on this stipulation, a part of the record on this appeal. Hence it does not appear in what manner the fund was paid out. The rights of attorney Middlecoff, or his assignee Tomlinson, by the terms of the instrument of August 20, 1932, attached only to the sum awarded as attorneys' fees, which was $4,200, and not to the sum awarded as other costs. Said instrument provided: "Total Atty fee . . . to be divided ¾ to Knapp, or his assignee, ¼ to W. W. Middlecoff. All costs to Knapp." If under the stipulation for distribution of all except $875 of the amount deposited by the city, attorney Warren had received $3,500 and attorney Richards $200, then only $500 of the sum of $4,200 would remain upon which the assignment of attorney's fees to Middlecoff could operate. The court below awarded the full amount of $875 remaining in court to Tomlinson, Middlecoff's assignee. All presump-

tions are in favor of the judgment. In this situation it must be presumed that the sum of $875 represents a balance of attorneys' fees arising from the other attorneys having failed to claim or having by the stipulation consented to accept less than the amounts found to be the reasonable value of their services in the condemnation suit. In fact, attorney Richards was not named as a party defendant or claimant to any part of the sum due from the city in its complaint in interpleader, and he may have already received payment from the Knapps for his services.

██ The judgment for attorneys' fees in the condemnation suit was in favor of the Knapps, as was the balance of the award for their costs. Where the court is authorized by statute to allow attorneys' fees in certain actions or proceedings, such allowance must be made to the party to the action for fees paid or incurred by him, and not directly to the attorney, who is not a party to the action. (*Keck* v. *Keck*, 219 Cal. 316 [26 Pac. (2d) 300]; *Stevens* v. *Stevens*, 215 Cal. 702 [12 Pac. (2d) 432]; *Chavez* v. *Scully*, 62 Cal. App. 6 [216 Pac. 46].)

██ The court below found that the instrument of August 20, 1932, constituted an assignment to Middlecoff of one-fourth of the total sum allowed as attorneys' fees in the award to the Knapps in the condemnation suit. Appellant Hye contends that the instrument was not an assignment, but merely an agreement for payment of compensation which would give Middlecoff no rights in the judgment as against Hye, an assignee thereof. (*McGown* v. *Dalzell*, 72 Cal. App. 197, 200 [236 Pac. 741].) We are of the view that without the aid of said instrument respondent Tomlinson, as successor to the rights of Middlecoff, would be entitled to $500 of the amount of $875 remaining on deposit. This sum the court in the condemnation suit found to be the reasonable value of Middlecoff's services, and included it in the award to the Knapps. The rule in this state, unlike that in other jurisdictions, is that an attorney generally has no lien on a judgment procured by his professional services in the absence of an express agreement for a lien. (*Tracy* v. *Ringole*, 87 Cal. App. 549 [262 Pac. 73]; *McGown* v. *Dalzell, supra; Gage* v. *Atwater*, 136 Cal. 170 [68 Pac. 581]; 3 Cal. Jur. 682.) But the judgment for attorneys' fees rendered in favor of a defendant upon aban-

donment of a condemnation suit is not the ordinary judgment in favor of a successful party to an action. Defendants' attorneys' fees are expressly mentioned in section 1255a of the Code of Civil Procedure, as an item to be included in the award of costs. The allowance of attorneys' fees is made to reimburse the defendant for fees which he has paid, or to indemnify him for fees which he has not paid, but has incurred. (*City of Long Beach* v. *O'Donnell*, 91 Cal. App. 760 [267 Pac. 585].) Where an award is made to the defendant in a condemnation suit for fees of an attorney whom the defendant has employed but has not paid, the rights of said attorney to a sum expressly allowed as and for his attorney fee is superior to the claim of an ordinary assignee of the judgment for costs and attorneys' fees, whether such assignee claims under an assignment prior or subsequent to the judgment for costs and attorneys' fees. If the superior right of said attorney may not accurately be described as a lien (*Tracy* v. *Ringole*, 87 Cal. App. 549, 551 [262 Pac. 73]), nevertheless he is entitled to the equitable interference of the court to protect his priority.

█ The trial court held that Tomlinson, as assignee of Middlecoff's rights, was entitled to receive the full amount of $875 remaining on deposit in court, and not only the sum of $500. We have heretofore said that on this appeal it must be presumed in support of the trial court's judgment for respondent Tomlinson that the entire amount of $875 represents an undistributed balance of the sum of $4,200 allowed as attorneys' fees in the condemnation suit, and paid into court by the city in this action in interpleader.

The court below upheld the rights of Tomlinson, as assignee of attorney Middlecoff, to receive the balance of $875 on the theory that the instrument of August 20, 1932, constituted an assignment to Middlecoff of one-fourth of the total amount which the court allowed as attorneys' fees in the condemnation suit. The amount of $500 found to be the reasonable value of Middlecoff's services in the condemnation suit was less than one-fourth of the total sum of $4,200 allowed as attorneys' fees. The award of attorneys' fees was in favor of the Knapps, and determined the amount which the city should pay. The separate computation in

the condemnation action of the reasonable value of the services of the several attorneys was made .primarily as a convenient mode of arriving at the total amount which the city should pay. The attorneys were not parties to said action. (*Keck* v. *Keck,* and other cases cited *supra.*) The award did not determine as between said attorneys and the Knapps possible conflicting claims of the attorneys in the sum awarded based on the relative value of their respective services or agreements with the Knapps for payment of fees. If this appeal involved conflicting claims of the several attorneys a question would be presented as to whether the instrument of August 20, 1932, assigned to Middlecoff more than a fair share of the award for attorneys' fees, considering the relative value of his services, and if so whether such an agreement would be valid as to the other attorneys. But on this appeal the other attorneys are asserting no claim to the balance of $875 attorneys' fees remaining, and the assignment of $875 may operate on this balance without prejudice to the rights of said other attorneys.

The court found in the instant action that the assignment to Middlecoff was for value, which, in the light of the findings as a whole, implied that the sum of $875 awarded to his assignee in this action, to which said assignee is a party, is not unreasonable for the services rendered by Middlecoff. We would not be warranted upon the record before us in overturning the finding of the trial court that the instrument of August 20, 1932, constitutes an assignment, rather than a mere agreement for compensation. The trial court made this finding in the light of evidence of the circumstances under which the instrument was executed. (Sec. 1860, Code Civ. Proc.) Furthermore, it would seem that the rights of an attorney asserting a claim to a fund allowed as attorneys' fees, and relying on this instrument, would be superior to the rights of a lay assignee even if it constituted only an agreement for compensation, and not an assignment.

■ Appellant further contends that a letter written by Middlecoff to Knapp on September 14, 1932, constituted an abandonment of whatever rights Middlecoff may have had under the instrument of August 20, 1932. Middlecoff wrote, " . . . you may fix and pay me such sum for attorneys fees . . . as you see fit, and such sum is hereby agreed

176

by me to be accepted in full satisfaction of all claims for services rendered or which may be rendered hereafter in said case''. It does not appear that Knapp ever replied to this letter. There is no satisfactory evidence that Knapp in response to Middlecoff's offer contained in his letter of September 14, 1932, ever acted to fix his fee. The court made no finding as to a new arrangement for Middlecoff's fee having been substituted for the agreement of August 20, 1932. This being the case, it must be held that the instrument of August 20th continued in full force and effect.

The judgment is affirmed.

Curtis, J., Langdon, J., Shenk, J., and Waste, C. J., concurred.

[Crim. No. 4015. In Bank.—August 5, 1936.]

THE PEOPLE, Respondent, v. JAMES F. WORKMAN, Appellant.

George Olshausen and George Anderson for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

THE COURT.—A hearing was granted in this court after decision by the District Court of Appeal, Third Appellate District, in order to consider defendant's contention

that reversible error had been committed by the trial court in passing upon the competency of jurors. It has subsequently appeared, and it is conceded by respondent, that after a prior trial, defendant's motion for a new trial was granted, and notice of appeal from the order granting such new trial was given by respondent. ██ Hence, an appeal was pending at the time the present trial took place, and the court below was without jurisdiction to try the defendant. The judgment must therefore be reversed on this ground, and it is unnecessary to determine the other issues raised by the defendant.

The judgment is reversed.

[S. F. No. 15063. In Bank.—August 6, 1936.]

BINGHAM GRAY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Joseph Scott and· Jerry Giesler for Petitioner.

Philbrick McCoy, S. V. O. Prichard and Warren E. Libbey for Respondent.

WASTE, C. J.—On charges laid before The State Bar, such proceedings were had that the board of governors made a recommendation to this court that petitioner here be suspended from the practice of the law for a period of one year. The usual proceedings were ordered, and petitioner filed herein his petition that this court review the decision of the board. A writ of review was issued, and on the hearing, it appearing that the transaction which formed the basis of the charges preferred against petitioner, and which resulted in the recommendation by the board of governors that he be suspended, involved a party or parties who participated therein with petitioner, but who were not proceeded against and whose conduct in the matter had not been inquired into, it was ordered that this entire proceeding be remanded to the board of governors with directions to reopen the same, and by proper orders to bring before it for investigation any members of The State Bar who directly participated in the said transaction, or to take such further steps as might seem meet and proper. (1 Cal. (2d) 226 [33 Pac. (2d) 1016].)

The matter was thereupon reopened. The attorneys in question and other witnesses were summoned before a special committee appointed by the board of governors. Much testimony was taken by this committee concerning the conduct and participation by members of The State Bar in the transaction involving petitioner. At the conclusion of the hearing, the committee recommended to the board that no further proceedings be taken with respect to any of the attorneys who had participated in the matter. The board of governors thereupon, by a supplemental report, in effect renewed its "recommendation of suspension" of petitioner.

We deem it unnecessary to comment upon the report of the special committee or the result of the proceedings held by it in response to the order of the court. The report it made was a matter for the consideration of and action by the board of governors (State Bar Act, sec. 30 et seq.). The receipt and approval of the report by the board ended

that matter, so far as there was a proceeding here. No recommendation for disciplinary action having been made, there is nothing before the court pertaining to the matters referred to The State Bar.

We hold no brief for the petitioner. But, for more than three years, the action of The State Bar in entertaining and investigating the charges preferred against him has been "public property". It has engaged the attention of this court for approximately that length of time. It has been the subject of general notice in the press at large and in the papers devoted to the publication of "legal news". The public, and especially the members of the legal profession, have been cognizant of the charges preferred and the progress of the investigation. We must conclude, from the personal history of petitioner, that he is not one who would intentionally seek to violate his oath as a lawyer, or abuse the confidence which must, of necessity, attach to the relation existing between an attorney and client. This conclusion finds support in petitioner's personal background. He is descended from a long line of barristers and attorneys who were patriotic and prominent in the early days of Virginia. His legal training, interrupted for a time by military service during the world war, was obtained at two of the country's outstanding universities. We find nothing in the record tending to discredit petitioner's personal or professional activities during the time he has engaged in the practice of the law. Quite to the contrary. Many testimonials of the good personal character and fine social associations and activities of petitioner are submitted. No professional act of petitioner, so far as the record shows, was questioned until the present charge was preferred. Many prominent members of the bench and bar vouch for this fact. No client of petitioner is here complaining. In the present cause petitioner was not charged with an offense arising out of misapplication of a client's money or property, or with secret fraud and deceit practiced on a weak, ill-advised or confiding client. On the contrary, the record does not disclose that petitioner, at any time, did anything in a secretive manner: In the transaction involved he dealt at arm's length and above board with the representatives of a large and important service corporation, who, in their own inter-

ests, submitted the matter to several prominent members of the bar in the community before closing the transaction.

When the hearing of the charge against petitioner came before the committee, petitioner did not seek to evade the issue, but then sought, and at all times since and now seeks, to justify, as proper, his part in the transaction. Maintaining this attitude, he has at all times disclaimed any intention of wrongdoing, and has constantly and persistently pleaded his good faith in all that he did in the transaction complained of. In view of all these facts, we cannot bring ourselves to a satisfactory conclusion that the petitioner was guilty of acts so inherently bad and vicious as to subject petitioner to liability of conviction for the crime of extortion. If it could be successfully contended that he was liable to such conviction for his part in the transaction, he should not be permitted to longer remain a member of the legal profession. ■■ This conclusion requires a brief reference to the established rules which govern the consideration by this court of disciplinary matters brought here after action by The State Bar. This court treats the findings of the board ·of governors as findings of an intermediary agency, in order that our review may extend to the determination of the sufficiency of the facts to support them, and whether or not the findings in turn support the recommendation of the board. (*In re Shattuck,* 208 Cal. 6 [279 Pac. 998].) The facts underlying the present proceeding are fully, even minutely, set forth in the voluminous record of the two hearings had before The State Bar. We have made a careful examination of such record. It has been the basis for lengthy briefs and extended argument before the court after each hearing. ■■ Without undertaking to state in detail these facts, we have reached the conclusion that the order recommending suspension of petitioner should be reversed.

It appears that the members of the local administrative committee, which first reported its findings to the board of governors, were not a unit as to the recommendation. Members of this court have, at different times, held different opinions on the matter. The unimpeached record shows that petitioner is not a shameful, wicked or depraved person. Prior to the initiation of these charges, he enjoyed a good reputation as an attorney having a large clientele and

being entrusted with the handling of important matters for his clients. His general reputation in the community is good. The State Bar has not recommended a penalty other than suspension for one year. Petitioner has rested under the odium of these charges and ensuing proceedings for more than three years. That, in and of itself, is a very severe ordeal. (*In re Petersen*, 208 Cal. 42, 56 [280 Pac. 124].)

The order of the board of governors of The State Bar is annulled, and the proceedings based thereon are dismissed.

CURTIS, J., LANGDON, J., SEAWELL, J., Concurring. We concur in the conclusion reached in the foregoing opinion. The record before us shows that other members of The State Bar participated in the transaction out of which the present charge against petitioner arose. The whole matter was gone into by the board of governors of The State Bar with the result that all persons involved therein except the petitioner were exonerated from any wrongdoing in connection with said transaction. It would be most unjust and inequitable to penalize the petitioner under these circumstances. .For this reason, we have given our concurrence to the order dismissing the petition.

Thompson, J., and Shenk, J., dissented.

Rehearing denied. Shenk., J., and Thompson, J., voted for a rehearing.

[S. F. No. 15448. In Bank.—August 7, 1936.]

WILLIAM W. SCARLETT, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY (a Corporation), Appellant.

Robert Brennan, Leo E. Sievert and H. K. Lockwood for Appellant.

James F. Hoey, Clifton Hildebrand, Warren Cunningham, Louis E. Goodman, Louis H. Brownstone, Werner, Martin & Hildebrand and Thomas F. McCue for Respondent.

THE COURT.—In this case a rehearing was granted to give consideration to appellant's several contentions questioning the soundness of the holding of this court.

A further review of the cause leads us to adhere to the conclusions already announced and our former opinion, written by Mr. Justice Seawell, is hereby adopted as a part of this decision. It reads:

"Plaintiff recovered judgment against defendant Atchison, Topeka and Santa Fe Railway, a corporation, for $18,000 damages for personal injuries received by him in the course of his employment by said defendant as a brakeman. Defendant appeals from the judgment.

"The accident took place on August 27, 1931, at Mormon, California. Plaintiff had been upon the top of the rear car of a cut of freight cars in the course of his employment, and was descending the ladder on the side of the car when his foot slipped and he fell to the ground. He received serious injuries, including the fracture of bones of his left wrist. It became necessary to remove certain of the bones of the wrist, with the result that plaintiff has suffered a permanent disability to his left hand, wrist and arm, which prevents his continuance in employment as a railroad brakeman.

"The ladder from which plaintiff fell is located on the side of the car, within a few inches from the end of the car. Back of the ladder, in a diagonal position, is a round metal rod, which serves to brace the end and side of the car. Plaintiff attributed his fall to the presence of this diagonal brace rod. He testified that as he descended the ladder his foot came in contact with the diagonally placed round brace rod, instead of the horizontal ladder rung, causing him to lose his footing and fall to the ground. At the time plaintiff fell, the train was moving at a speed of about two miles an hour. It is his contention that the presence of this round bar rendered the ladder insecure, in violation of pro-

visions of the Federal Safety Appliance Act of 1910. (36 U. S. Stats. at L., p. 298; U. S. C. A., title 45, secs. 11–16.) ■ Where an injury is proximately caused by a condition existing in violation of any of the several safety appliance acts of Congress, including the Boiler Inspection Act (36 U. S. at L., p. 913; U. S. C. A., title 45, secs. 23, 24), the carrier is absolutely liable therefor, although it is ignorant of the defect and has used ordinary care to maintain its equipment in the required condition. (*St. Louis Iron Mountain & S. Ry. Co.* v. *Taylor*, 210 U. S. 281, 294 [28 Sup. Ct. 616, 52 L. Ed. 1061]; *Baltimore & Ohio R. R. Co.* v. *Groeger*, 266 U. S. 521, 527 [45 Sup. Ct. 169, 69 L. Ed. 419]; *Illinois Central R. R. Co.* v. *Williams*, 242 U. S. 462, 466 [37 Sup. Ct. 128, 61 L. Ed. 437]; *Texas & Pacific Ry.* v. *Rigsby*, 241 U. S. 33, 43 [36 Sup. Ct. 482, 60 L. Ed. 874]; *United States* v. *Chicago, St. P., M. & O. Ry.*, 43 Fed. (2d) 300, 302 [71 A. L. R. 507].) The effect of said acts is to substitute an absolute liability for the common law liability based on negligence. Not only is the liability absolute, but by express statutory provision the defenses of assumption of risk and contributory negligence are eliminated. (27 U. S. Stats. at L., p. 532; U. S. C. A., title 45, sec. 7; 35 U. S. Stats. at L., p. 66; U. S. C. A., title 45, secs. 53 and 54; *Great Northern Ry. Co.* v. *Donaldson*, 246 U. S. 121 [38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581]; *Texas & Pac. Ry.* v. *Rigsby, supra; Ballard* v. *Sacramento N. Ry. Co.*, 126 Cal. App. 486, 490 [14 Pac. (2d) 1045, 15 Pac. (2d) 793].) ■ Where the action is not predicated upon a violation of safety appliance acts, but on common law negligence not constituting a violation of said acts, the defense of assumption of risk is permitted, and as to contributory negligence the statute provides that damages shall be diminished by the jury in proportion to the amount of negligence attributable to the employee. (U. S. C. A., title 45, sec. 53; *Erie R. Co.* v. *Lindquist*, 27 Fed. (2d) 98.)

