[Civ. No. 7089.   Third Dist.   May 15, 1945.]

CALIFORNIA EMPLOYMENT COMMISSION, Appellant,
v. J. W. SUTTON, Respondent.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Appellant.

Rogers & Clark, John H. Painter and John W. Broad for Respondent.

ADAMS, P. J.—Plaintiff brought this action under section 45 of the Unemployment Insurance Act (Stats. 1935, p. 1226, as amended in 1939; Deering's Gen. Laws, Act 8780d), alleging in its complaint that defendant Sutton was at all times mentioned an employer within the terms of section 9 of the aforesaid act, that between January 1, 1938, and December 31, 1940, he paid wages in the amounts shown on an attached schedule, Exhibit "A," that, without good cause shown, he failed to pay contributions required of him as such employer, and that he was indebted to plaintiff in the sum of $755.57, including penalties and interest.

Defendant in his answer denied the aforesaid allegations except as to one employee for a short time, and set up, as a special defense, that both he and said employee were engaged in agricultural labor.

The action came on for trial before the court sitting without a jury, and plaintiff, in support of its complaint, offered in evidence a certified assessment of the commission showing the amount claimed to be due, a decision of the commission authorizing the assessment, and the entire record of proceedings which had been had before the commission culminating in its decision and assessment. Defendant objected to the admission of anything but the certificate, and his objection was sustained. Thereupon plaintiff rested. Defendant then offered evidence in support of his answer, which was admitted over the objection of plaintiff which contended that with the filing of the certificate there was nothing for the court to do but enter judgment for plaintiff.

At the conclusion of the trial the court made findings in favor of defendant, found that he was not an employer ex-

cept as to one person in 1939 and 1940, and that he and said employee were engaged in agricultural labor within the meaning of section 7(a) of the act. From the judgment in favor of defendant, plaintiff has appealed, contending that the trial court erred in refusing to admit in evidence the transcript of the prior proceedings before the commission, that the court should have considered the evidence before the commission, and sustained its findings if there was any substantial evidence to sustain them and it was not shown that the commission acted arbitrarily or capriciously, that the trial court, in this action, was, in effect, a reviewing court, and while it could exercise an independent judgment on the facts as shown by the record before the commission, there was a strong presumption in favor of the conclusion of the commission, and that this case does not differ from cited cases in which review of the decisions of the commissioner were under review in proceedings by mandamus or certiorari. Appellant also contends that the evidence is insufficient to show that defendant was not an employer within the meaning of the act, or that he and his one employee were engaged in agricultural labor.

The first matter to be decided is what the Legislature intended should be the scope of the ''civil action'' authorized by section 45 of the act, *supra*. That section, as it read when this action was filed, provided:

''If any employer fails to make any payment required of him, or fails to deduct and pay to the commission the contributions of his workers, in accordance with the provisions of this act and of the rules and regulations adopted by the commission, he shall become additionally liable for interest on such payments at the rate of twelve per cent per annum from the date such payment becomes due, both principal and interest being payable in the same manner as the contributions. *Such payment and interest shall be collectible in the name of the commission in any manner practicable, including civil action by the commission against the defaulting employer.*'' (Italics ours.)

Appellant contends that by such ''civil action'' it was intended only that the trial court should review the record before the commission, and apply the principles announced in such cases as *Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]; *Sipper* v. *Urban*, 22 Cal.2d 138 [137 P.2d 425]; *Vaughn* v. *Board of Police Commissioners*,

59 Cal.App.2d 771 [140 P.2d 130]; *Madruga* v. *Borden Co.*, 63 Cal.App.2d 116 [146 P.2d 273], and *National Labor Relations Board* v. *Hearst Publications*, 322 U.S. 111 [64 S.Ct. 851, 88 L.Ed. 1170]. Respondent, on the other hand, contends that the term ''civil action'' was used in the commonly accepted sense of that term, involving a trial of issues raised by the pleadings, independent of any previous hearing by the commission except that, as provided by section 45.1 of the act, a certificate attested by the commission or its duly authorized agent showing a delinquency on the part of defendant shall be prima facie evidence of the payment by the employing unit of the amount of wages for employment by employers set forth therein, of the levy of contributions, of the delinquency, and of the compliance by the commission with all of the provisions of the act in relation to the computation and levy of the contributions specified in such certificate.

The trial court adopted respondent's contention, and we are of the opinion that its conclusion was correct. Proceedings in mandamus, certiorari and the like are not generally classified as ''civil actions'' but as ''special proceedings of a civil nature.'' They are so denominated in our Code of Civil Procedure, part III; and sections 21, 22 and 23 of that code likewise distinguish civil actions from special proceedings. It is said in 1 California Jurisprudence, pages 325, 326, section 16, that the distinction between a special proceeding and an action is well recognized, and that the terms are not to be used interchangeably. (Also see *Carroll* v. *Carroll*, 16 Cal.2d 761, 768 [108 P.2d 420]; *In re Central Irrigation District*, 117 Cal. 382, 387 [49 P. 354]; *Estate of Joseph*, 118 Cal. 660, 662-663 [50 P. 768]; *Estate of Harris*, 3 Cof. Prob.Dec. 1; *Sheehan* v. *Board of Police Commissioners*, 188 Cal. 525, 535 [206 P. 70].)

It is to be assumed that the Legislature, in enacting section 45, *supra*, had in mind the distinction between civil actions and special proceedings such as were before the court in the cases relied upon by appellant, and that they meant by use of the term civil action such action as is defined in section 22 of the Code of Civil Procedure, wherein the court should take testimony as to the issues made by the pleadings and from such evidence make its own decision independent of any prior proceeding before the commission. This conclusion finds support in section 45.1 of the act which provides:

''In any civil action brought by or against the commis-

sion, all of the courts of this State shall give preference to such action on their calendar over all civil litigation except equity cases, cases involving extraordinary writs, or summary proceedings. In any such action a certificate attested to by the commission or its duly authorized agent showing the delinquency shall be prima facie evidence of the payment by the employing unit of the amount of wages for employment by employers set forth therein; of the levy of the contributions; of the delinquency; and of the compliance by the commission with all the provisions of this act in relation to the computation and levy of the contributions specified in such certificate."

It also finds support in section 45.3, which gives evidentiary effect to a finding of the commission that there exists no good cause excusing the delinquency of an employer, or that such employer's failure is due to intentional fraud, stating that such findings shall be prima facie evidence of the existence of such facts. No other findings of the commission are made even prima facie evidence, and such omission indicates that all other issues presented in such a civil action are to be tried by the court regardless of any findings thereon by the commission.

In the recent case of *California Employment etc. Com.* v. *Smileage Co.*, 68 Cal.App.2d 249, 251 [156 P.2d 454], the court said regarding the certificate mentioned in section 45.1:

"The certificate being prima facie evidence of the facts it sets forth, it established the allegations necessary to make out a case for plaintiff until contradicted and overcome by other evidence. Any evidence in the case contrary to the prima facie case established by the certificate of delinquency merely created a conflict in the evidence to be resolved by the trial court."

The form of appellant's pleadings suggests, too, that it so construed the act, for it did not plead that it had made findings that defendant was an employer, etc., and that said findings were sustained by the evidence before the commission and were not unreasonable or arbitrary, and thus present those issues for the trial court's determination. On the contrary, the only issues presented were that defendant was an employer, that he had made payment of wages, that he had failed to make contributions, and that he was indebted for the amount thereof with penalties and interest.

Appellant cites section 82 of the act, enacted in 1943, and

in effect subsequent to the trial of this action, as showing a legislative intent to give "as much finality as possible" to the decisions of the commission, since it provides that "The decision of the appeals board is final, except for such action as may be taken by judicial tribunal as permitted or required by law." But the very statement of the exception embodied in that provision appears to be a recognition of the provisions of section 45, *supra*. In *Scripps Memorial Hospital*, v. *California Employment Commission*, 24 Cal.2d 669 [151 P.2d 109], where plaintiff brought an action under section 45.10 of the act to recover contributions which it had paid under protest, it was contended by the commission that plaintiff had failed to exhaust its administrative remedy and was, therefore, not entitled to maintain its action. The court said, page 674:

"The right to pay under protest and bring such an action is directly given in this statute without qualification, and it is not for the courts to add conditions to the exercise of that right which are not imposed by the statute. Assuming that an administrative remedy existed the most that can be said is that alternative remedies were available to the respondent, and the court correctly refused to grant the motions to dismiss."

Also, in *W. R. Grace & Co.* v. *California Employment Commission*, 24 Cal.2d 720, 727, 728 [151 P.2d 215], the court said that actions brought under section 45.10 and section 41.1 of the act differ substantially from proceedings in mandamus; that the petition for mandamus there under consideration was in effect an appeal to the courts.

We therefore conclude that the trial court did not err in excluding the record of the proceeding before the commission and in admitting evidence in support of the allegations of defendant's answer.

The next question presented is whether there is sufficient evidence in the record to support the findings of the trial court that defendant Sutton was not an employer. Considering the evidence and all reasonable inferences therefrom in the light most favorable to respondent, and disregarding conflicting testimony as we must do on this appeal (*Mah See* v. *North American Accident Insurance Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123] ; *City of Los Angeles* v. *Knapp*, 7 Cal.2d 168, 172-173 [60 P.2d 127]), it shows the following. Sutton was, and had been for many years, engaged in sheep

shearing. He owned certain equipment which consisted of a truck upon which were mounted a gasoline engine, motors and a generator designed to operate sheep shears electrically. He did not furnish shears, same being furnished by the shearers, who also furnished their own cutters and combs. During the sheep shearing season each year he moved his equipment from one sheep ranch to another where his services were desired by the growers, using the shearing sheds, pens, etc., on such ranches. Because of his contact with shearers and his knowledge of their capabilities he was often requested by the wool growers for whom he worked, to locate good shearers for them. Consequently, he often rounded up sheep shearers to do the work. On some occasions wool growers instructed him to bring certain specified shearers with him or not to bring certain men, and on such occasions he complied with their instructions. For the same reason, on some occasions he located wranglers and sackers to assist in the work, but those men were often located and hired directly by the growers.

Unlike a contractor who does a job with his own employees, Sutton had no control over the wages of the shearers and other men who worked with him. He did not negotiate with the growers regarding the amount to be paid to the shearers and other men and he did not determine their compensation in any way. They were paid the prevailing wage, and Sutton's earnings on a job were not affected by the amount paid to the other men. The only compensation in which he had any interest was his own wage and the portion of same which he paid to a wool tier. The growers instructed him regarding the number of shearers, wranglers and sackers to be used on a job and that was not Sutton's concern. If the number of persons working was kept at a minimum so as to avoid excessive costs, Sutton's compensation was not increased in any way. Neither was his compensation decreased if an excessive number of men were hired or if their wages were excessive.

The shearing operations were carried on on the ranches of the growers, and the sheds and pens in which the shearing was done were supplied by them. All of the men, including Sutton, were furnished board and room by and at the expense of the growers. These accommodations were usually furnished on the grower's premises and were not controlled by Sutton.

The date upon which the shearing for any grower commenced did not depend upon the volition of Sutton, but rather upon the grower's analysis of weather conditions and

the danger of flies and burrs. Successive shearing dates were agreed upon between Sutton and the growers on the basis of their mutual convenience and necessities.

During the shearing operations the growers maintained constant control over all of the men. Either the grower or his foreman was always present and instructed the shearers and the other men how they wanted the work done, told the men whether they were doing their work properly, and inspected the sheep in the inspection pens after they were shorn. Likewise, the grower, or his foreman, counted the sheep and kept the records of the number of sheep shorn by each of the shearers. Those records furnished the basis for the wages paid to the shearers, and to Sutton when he was not paid by the day. Sutton gave no instructions to the shearers regarding the manner of doing the work unless he was requested by the grower or the grower's foreman to do so.

Sutton, the shearers and all other men working with him, were subject to immediate dismissal by the grower for any reason, without any resulting liability upon the grower. It was understood by all of them that a grower could fire any of them at any time. Also, Sutton and the other men were free to quit their work at any time without any liability to the growers.

Sutton carried no workmen's compensation insurance on any of the men. The growers carried such insurance upon the entire crew, including Sutton and the tier. Sutton had no office, kept no records, had no stationery or business cards, and did no advertising. He did not maintain anything which could be claimed to be a business establishment. The sackers and wranglers were paid on a daily basis and were customarily paid directly by the growers. The shearers, tier and Sutton were, in every year but 1938, paid on the basis of the number of sheep shorn. Most of the growers paid all of these men directly; but some of the growers, usually those having small bands of sheep, computed the entire amount payable and paid it to Sutton, who distributed the pay to the others. However, on such occasions Sutton did not retain any share of the pay for the services of the other men.

In 1938 Sutton received a fixed sum of $45 per day for his own services and for his own equipment. No portion of that sum was paid for the services of any other person. He did not locate any of the shearers, wranglers, sackers or tiers during that year. They were hired directly by the grower.

Also, Sutton did not distribute the pay to any of the men during that year. All of them were paid directly by the growers.

We think the foregoing amply supports the finding of the trial court that Sutton was not an independent contractor, and that he and his coworkers were employees of the various growers.

In its recent decision in *California Employment Commission* v. *Los Angeles Downtown Shopping News Corp.*, 24 Cal.2d 421 [150 P.2d 186], the Supreme Court said that an independent contractor is a person who is engaged in an independent employment or occupation, responsible to his principal only for the result and not for the manner or means by which it is accomplished; that in determining whether an individual is an employee or an independent contractor the most important factor is the *right* to control the manner and means of accomplishing the result desired, and that if the employer has the power to exercise complete control, whether or not that potential control is exercised with respect to all details, an employer-employee relationship exists. It also said that strong evidence of the employer's control is his right to discharge at will without cause.

In the case before us the testimony shows that the various sheep growers for whom Sutton and the crew of shearers worked had and exercised the right to control the manner and means by which their sheep were shorn, and that they had, and exercised, the right to discharge any of them at will. Two wool growers for whom Sutton had worked so testified in this action, as did Sutton himself.

Section 6.5 of the Unemployment Insurance Act provides that " 'Employment,' subject to the other provisions of this act, means service . . . performed for wages or under any contract of hire, written or oral, express or implied. . . ." There is no evidence here that Sutton had any contract of hire with the men who made up the crew, except the one tier. He did not fix the wages of the men nor did he pay them. They were furnished board and room by and at the expense of the growers, and all records upon which their compensation could be computed were kept exclusively by the growers, and this was true even during the times that Sutton himself was paid so much per head of sheep shorn. And Sutton made no profit out of the enterprises except the sums paid directly to him for his services and the use of his equipment.

■ The only remaining question is whether the one tier who, during a portion of the period under consideration was paid out of the 3½ cents per head which Sutton received, was an employee of Sutton and one for whom Sutton became liable for contributions under the act. Section 8.5 of said act appears to cover just such a situation. It provides:

" 'Employing unit,' as used in this act, means any individual or type of organization . . . which has, or subsequent to January 1, 1936, had, in its employ one or more individuals performing services for it within this State. . . .

"Each individual employed to perform or to assist in performing the work of any individual employed by an employing unit shall be deemed to be employed by such employing unit for all the purposes of this act, whether such individual was hired or paid directly by such employing unit or by such individual so employed, providing the employing unit had actual or constructive knowledge of the work."

Since it cannot be denied that the growers—the employing units in this case—had knowledge of the work of the tier who was paid out of Sutton's 3½ cents per head, the foregoing section apparently brought such tier within the scope of the above section and constituted him an employee of the growers.

Our conclusion that the evidence is sufficient to show that Sutton and all of the crew working with him were employees of the growers renders it unnecessary for us to pass upon the question whether such employees were engaged in agricultural labor.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.