*1099 CHIN, J., Concurring and Dissenting.
I agree with the majority that as prevailing parties, Dearborn Insurance Company, Anglo-American Insurance, Ltd., and PLCM Group, Inc. (hereafter collectively PLCM) may recover from defendant David Drexler attorney fees under Civil Code section 1717[1] for the services of in-house counsel in this case. However, given the terms of the insurance contract here, I would limit the amount of the fee recovery to the actual cost of that representation. I disagree with the majority to the extent its opinion may be understood to hold otherwise.
I. PLCM May Recover Attorney Fees
The first question in this case—whether PLCM may recover attorney fees for the services of in-house counsel—has a simple answer. Under section 1717, subdivision (a), “[i]n any action on a contract, where the contract specifically provides that attorney’s fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney’s fees in addition to other costs.” The insurance contract in this case provides: “If the Insured fails, after demand, to reimburse the [insurance companies] for any amounts within the deductible which the [insurance companies have] advanced, the [insurance companies] may bring suit to recover such amounts and shall also be entitled to recover interest from the date of demand, and attorneys’ fees and costs incurred in bringing the action.” Drexler breached the insurance contract by refusing to reimburse his insurers for amounts within the deductible that they advanced on his behalf. PLCM prevailed at trial on both the breach of contract claim and on Drexler’s cross-complaint. Thus, PLCM was entitled to recover attorney fees under the contract and section 1717.
I reject Drexler’s contention, based on Trope v. Katz (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] (Trope), that PLCM may not recover attorney fees because it used in-house counsel. There, in holding that an attorney litigating in propria persona may not recover fees under section 1717, we relied principally on the ordinary meaning of (1) the word “incur,” which is “to ‘become liable’ for” or “to become obligated to pay” and (2) the term “attorney fees,” which is “the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation.” (Trope, supra, 11 Cal.4th at p. 280.) Drexler argues that corporations do not “incur attorney fees” for in-house counsel as Trope defines those terms. He is incorrect. As we suggested in Trope, but did not hold because the issue was not before us, the salary of in-house counsel “is the functional equivalent of *1100 the fee.” (Id. at p. 291.) A corporation should not forfeit its right to recover attorney fees simply because it anticipates its future need for litigation counsel and hires attorneys as employees to handle litigation that may subsequently arise. Thus, I conclude that under the contract and section 1717, PLCM may recover attorney fees for the services of in-house counsel.[2]
II. PLCM May Not Recover More Than Actual Costs Incurred
As the majority explains, the trial court awarded PLCM attorney fees based on market value, i.e., the reasonable in-house attorney hours multiplied by the prevailing hourly rate in the community for comparable legal services. (Maj. opn., ante, atp. 1094.) As the majority also explains, Drexler argues the trial court should have used a “cost-plus approach,” i.e., a calculation of the actual salary, costs, and overhead of in-house counsel. (Maj. opn., ante, at p. 1096.) The majority rejects Drexler’s argument. It concludes that although a trial court has discretion “in exceptional circumstances” to use “methodologies” other than “the lodestar method” (id. at p. 1097), “[njothing” in section 1717 “compels” use of the cost-plus approach (maj. opn., ante, at pp. 1096-1097).
In my view, because the contract in this case provides for recovery only of “attorneys’ fees and costs incurred in bringing the action” (italics added), the cost-plus approach the majority describes establishes the maximum amount of an attorney fees award. In Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83] (Reynolds), we reviewed an attorney fees award to the defendants who defeated a claim based on two promissory notes. The notes contained a provision “for recovery of collection costs, including attorney’s fees limited to 15 percent of the principal amount of the notes, in the event of default.” (Id. at p. 127.) The defendants did not sign the notes, but the plaintiff alleged they were nevertheless liable as alter egos of the bankrupt companies that did. (Ibid.) Citing section 1717’s equitable purposes—establishing mutuality of remedy and preventing oppressive use of one-sided attorney fees provisions—we first held that the defendants could recover attorney fees even though they had not signed the notes containing the attorney fees provision. (Reynolds, supra, 25 Cal.3d at pp. 128-129.) We then held that the trial court erred in awarding an amount of attorney fees in excess of the contractual limit, explaining: “Because the promissory notes contained provision limiting attorney’s fees to 15 percent of the amount of the notes . . . , recovery of fees under section 1717 must *1101 be similarly limited. . . . [T]he statutory right should be no greater than the contractual right.” (Reynolds, supra, 25 Cal.3d at p. 130.) Thus, under Reynolds, a trial court may not award an amount of attorney fees that exceeds contractual limits on the award.
Applying Reynolds on facts like those now before us, the court in San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority (1998) 61 Cal.App.4th 910, 919 [72 Cal.Rptr.2d 91] (San Dieguito) rejected the same market rate approach the majority now adopts. There, a partnership unsuccessfully sued a joint powers authority (JPA) for breach of a settlement agreement. The agreement contained a provision entitling the prevailing party in any action to enforce the agreement “ ‘to an award in the amount of attorneys’ fees and costs incurred in connection with the prosecution or defense of such action.’ ” (Id. at p. 914.) The trial court awarded the successful JPA a “lodestar” amount of attorney fees, which it calculated by multiplying the number of hours spent on the case by “ ‘fair market hourly rates,’ ” even though counsel actually charged the JPA “ ‘below market rates’ . . . .” (Id. at p. 915.) On appeal, the partnership argued that “under the terms of [the agreement’s attorney fees] provision, JPA was entitled to recover only those attorney fees it actually ‘incurred,’ and the court was without discretion to award a greater amount.” (Id. at p. 917.) In response, the JPA cited the same provision of section 1717 on which the majority relies—“[Reasonable attorney’s fees shall be fixed by the court”—and argued that it showed “the Legislature intended to allow the court the discretion to award a prevailing party more attorney fees than it actually incurred.” (San Dieguito, supra, 61 Cal.App.4th at p. 917.)
The appellate court in San Dieguito rejected the JPA’s claim, holding that “even under section 1717,” where the parties “specifically agree the prevailing party shall be entitled to an award ‘in the amount of attorneys’ fees and costs incurred,’ the court has no . . . power” to award fees “in an amount greater than the prevailing party actually incurs . . . .” (San Dieguito, supra, 61 Cal.App.4th at p. 919.) As direct authority for this conclusion, the court cited our holding in Reynolds that “the statutory right should be no greater than the contractual right.” (San Dieguito, supra, 61 Cal.App.4th at p. 919.) The court also reasoned that a contrary conclusion would be “inconsistent with” Trope. (San Dieguito, supra, 61 Cal.App.4th at p. 917.) It explained: “In concluding that the Legislature did not intend [to allow attorneys representing themselves to recover attorney fees under section 1717], the [Trope] court stated in relevant part as follows: ‘[B]y its terms section 1717 applies only to contracts specifically providing that attorney fees “which are incurred to enforce that contract” shall be awarded to one of the parties or to the prevailing party. ... To “incur” a fee, of course, is to “become liable” *1102 for it (Webster's New Internat. Dict. (3d ed. 1961) p. 1146), i.e., to become obligated to pay it. . . . [¶] [T]he usual and ordinary meaning of the words “attorney’s fees,” both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation.’ (Trope v. Katz, supra, 11 Cal.4th at p. 280, italics in original.) Thus, under the Supreme Court’s reading of the statute, the object of the provision in section 1717 allowing the recovery of ‘reasonable attorney’s fees’ is to reimburse a party for attorney fees the party has paid, or to indemnify the party for fees the party has become liable to pay, provided the fees so paid or incurred are reasonable. (Trope v. Katz, supra, 11 Cal.4th at p. 282.)” (San Dieguito, supra, 61 Cal.App.4th at pp. 917-918.)
In my view, the court in San Dieguito correctly applied Reynolds and Trope and reached the right conclusion, and the majority fails to demonstrate otherwise. The majority disapproves San Dieguito to the extent it relied on Trope's statement that “the usual and ordinary meaning of the words ‘attorney’s fees,’ both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation.” (Trope, supra, 11 Cal.4th at p. 280; see maj. opn., ante, at p. 1097, fn. 5.) According to the majority, this statement in Trope is “inapposite” because “[t]he question of how to measure attorney fees was not raised in Trope (Maj. opn., ante, at p. 1097.) However, although Trope may not be dispositive here given the issue it addressed, it certainly is not irrelevant. Moreover, the majority fails to recognize that the court in San Dieguito also based its holding directly on our decision in Reynolds.
Indeed, the majority makes only passing reference to Reynolds in a footnote (maj. opn., ante, at p. 1097, fn. 5) and never directly considers our holding there that “the statutory right should be no greater than the contractual right.” (Reynolds, supra, 25 Cal.3d at p. 130.) Instead, citing two Court of Appeal decisions and one from a superior court appellate department, the majority declares that “[although the terms of the contract may be considered, they ‘do not compel any particular award.’ ” (Maj. opn., ante, at p. 1096.)
Upon examination, the two Court of Appeal decisions the majority cites do not support its conclusion, and in fact support the principle that contractual terms establish the maximum amount of an attorney fees award. In Vella v. Hudgins (1984) 151 Cal.App.3d 515 [198 Cal.Rptr. 725] (Vella), both parties challenged on appeal the amount of a fee award under an attorney fees clause in a deed of trust. The court affirmed the award, holding that its amount did not need to equal the amount the successful party owed her counsel under a contingency fee contract. (Id. at pp. 519-522.) But the court *1103 also indicated that the award could not be more than the amount owed, explaining: “We do accept defendant’s initial premise, that the award of fees in this case was an item of costs and, thus, limited to those costs reasonably and necessarily incurred by the prevailing party.” (Id. at p. 519.) The court found this principle supported by City of Los Angeles v. Knapp (1936) 7 Cal.2d 168 [60 P.2d 127] (Knapp), which “concluded: ‘Where [statutes authorize an attorney fees award], such allowance must be made to the party to the action for fees paid or incurred by him .... The allowance of attorneys’ fees is made to reimburse the defendant for fees which he has paid, or to indemnify him for fees which he has not paid, but has incurred. [Citation.]’ ” (Vella, supra, 151 Cal.App.3d at pp. 519-520.) The Vella court also found that its agreement with defendant’s premise “avails him nothing, since we have already concluded that plaintiff had [actually] incurred a liability for attorney’s fees far in excess of the $50,000 award.” (Id. at p. 520.) The court later explained that the fee award need not “equal the full amount of the client’s obligation” to counsel. (Id. at p. 521, italics added.) Thus, Vella supports the conclusion that the fee amount actually paid, owed, or incurred establishes a maximum fee award, which a court may reduce to make reasonable.
All-West Design, Inc. v. Boozer (1986) 183 Cal.App.3d 1212 [228 Cal.Rptr. 736] is completely consistent with this conclusion. There, although stating that an attorney fees award in “exactly” the amount awardable under a contingency fee contract “was unnecessary,” the court also noted that “[t]he actual contingent fee would have been higher [than the amount awarded], assuming no offset credits.” (Id. at p. 1227, original italics.) Thus, neither of the Court of Appeal decisions the majority cites supports an award of attorney fees in an amount greater than that recoverable under the contract’s terms. Instead, both support the principle that the contract’s terms establish the maximum amount of an attorney fees award.
The third decision the majority cites, Beverly Hills Properties v. Marcolino (1990) 221 Cal.App.3d Supp. 7 [270 Cal.Rptr. 605] (Beverly), provides little help in deciding the issue here. The main focus of the Beverly opinion was determining whether attorney fees “are incurred”—and therefore recoverable—within the meaning of section 1717 where counsel incurs costs and expenses but does not charge the client a fee. (Beverly, supra, 221 Cal.App.3d at p. Supp. 11.) The answer to this question is not relevant to determining whether section 1717 authorizes a market rate fee award that exceeds the actual cost of representation. In a footnote, the Beverly opinion also considered whether the operative attorney fees clause was valid to the extent it “require[d] the successful party to have actually incurred fees before being entitled to recover them” and “prohibited] recovery of attorney *1104 fees if the successful party is not actually charged by his attorney.” (Beverly, supra, 221 Cal.App.3d at p. Supp. 10, fn. 3.) Beverly characterized these “portions” of the attorney fees clause as “waiver provisions” and found them “void” because section 1717 “expressly prohibits a waiver of attorney fees available thereunder.” (Beverly, supra, 221 Cal.App.3d at p. Supp. 10, fn. 3.) However, Beverly's discussion of this issue is conclusory; it includes no analysis and cites no cases. It does not consider, for example, our holding in Reynolds that “the statutory right should be no greater than the contractual right.” (Reynolds, supra, 25 Cal.3d at p. 130.) Moreover, “[n]either party” in Beverly even “mentioned” the issue, so the opinion addressed it without briefing. (Beverly, supra, 221 Cal.App.3d at p. Supp. 10, fn. 3.) Unlike the majority, I therefore conclude that Beverly is not instructive on the question we are considering.
For its conclusion, the majority also relies heavily on the sentence in section 1717, subdivision (a), that provides, “Reasonable attorney’s fees shall be fixed by the court, and shall be an element of the costs of suit.” According to the majority, consistent with this sentence and its purpose, “the trial court has broad authority to determine the amount of a reasonable fee.” (Maj. opn., ante, at p. 1095.) Presumably, then, under the majority’s view of section 1717, nothing prevents a court, in setting a reasonable fee based on its assessment of the circumstances, from enhancing a fee award by applying a multiplier to the market rate amount. (See Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 322 [193 Cal.Rptr. 900, 667 P.2d 704].)
Although I agree that a trial court has broad authority to determine the amount of a reasonable fee, I do not agree that section 1717, in directing that “[Reasonable attorney’s fees shall be fixed by the court, and shall be an element of the costs of suit,” authorizes a market rate fee award that exceeds the actual cost of representation. The Legislature added this language to the statute in 1981 simply to'clarify the procedure for awarding attorney fees. Before the amendment, courts disagreed as to whether recoverable attorney fees constituted (1) special damages that had to be pled and were determined by the jury, or (2) costs that did not have to be pled and were fixed by the court. The 1981 amendment simply adopted the latter approach, specifying that fees are costs (not special damages) to be fixed by the court (not the jury). (See Santisas v. Goodin (1998) 17 Cal.4th 599, 629 [71 Cal.Rptr.2d 830, 951 P.2d 399] (conc. & dis. opn. of Baxter, J.).) It did not confer on the trial court broad authority to make a market rate fee award regardless of the actual costs of representation.
Nor do I find the policy considerations the majority cites compelling. The majority asserts that, unlike the market rate approach, the cost-plus approach *1105 “may distort the incentives for settlement and reward inefficiency.” (Maj. opn., ante, at p. 1097.) However, the majority does not explain the basis for this assertion, and it seems that in fact the majority’s market rate approach is more likely to produce these undesirable effects. In-house costs will often be lower than market costs because, as amicus curiae American Corporate Counsel Association (Counsel Association) explains, “[i]n-house counsel have the rare advantage of operating with a full-time focus on and a deep understanding of their client’s business and legal needs.” Thus, a potential for recovery of a market rate fee that exceeds actual in-house costs may make corporations less willing to settle. Corporations may also have less incentive to ensure that their attorneys work efficiently and keep hours down if they may potentially recover fees for those hours based on a market rate that exceeds the in-house rate. In any event, using either approach, a trial court may simply reduce a fee award to account for inefficiency. At worst, then, a cost-plus approach creates no greater problem in this regard.
I also disagree with the majority’s response to Drexler’s claim that a market rate approach will generally produce an unjustified windfall. Citing amicus curiae Counsel Association, the majority asserts that “cost-per-hour” does “not always . . . drive[]” the decision to select in-house counsel. (Maj. opn., ante, at p. 1198.) What Counsel Association actually says is that this decision “often revolves around issues of cost, in addition to other, less tangible factors.” (Italics added.) Counsel Association also states that corporations make this decision “based on an assessment of their presumed risks versus predictable costs.” Thus, costs surely play a major, and often determinative, role in the decisonmaking process. Moreover, by definition a market rate includes a profit component on top of costs. (See In re Cassell (W.D.Va. 1990) 119 B.R. 89, 92.) Thus, a market rate approach will often penalize the losing party and reward the corporation by resulting in a fee award that exceeds cost. The majority does not explain how this likely result squares with the equitable purposes of section 1717 that are central to the majority’s analysis. On the other hand, a cost-plus approach, by awarding the victorious corporation the amount to which it is entitled, but no more, would punish neither the corporation for using in-house counsel nor the losing party. Thus, it would better serve the statute’s equitable goals and serve the purpose of a fee award, which is reimbursement, not punishment. (Knapp, supra, 7 Cal.2d at p. 175.)
Specifically as to this case, I also disagree with the majority that the evidence in the record “undercuts” Drexler’s assertion that in-house counsel’s expenses here were less than the market rate for private counsel. (Maj. opn., ante, at p. 1098.) According to the majority, PLCM’s counsel “estimated that actual expenses for in-house counsel in this matter would have *1106 exceeded the market rate.” (Ibid.) However, because counsel made this representation during oral argument and the appellate record apparently contains no evidence to support it, we should not consider it. The majority also quotes the declaration of PLCM’s trial counsel, which stated: “[T]he San Francisco office of [in-house counsel] is a ‘cost center’ for purposes of [the] annual budget process, with expenses of operation analogous to those of other law offices, e.g., attorney and support-staff compensation, rental of office space and equipment, supplies, travel, etc.” However, it is far from clear that this statement refers to the amount of these items, as opposed to simply categories of expenses. Moreover, even if it refers to amount, it does not establish or even indicate that in-house costs are not lower than market costs; “analogous” does not mean “equal to.” In any event, as I have explained, by definition a market rate includes more than operating costs; it also includes a profit component. Thus, the record does not undercut Drexler’s assertion.
The likelihood that use of a market rate, which by definition includes a profit component, will produce a fee award that exceeds actual costs raises an additional issue that, although not raised by the parties, is relevant to the question before us. Several federal and state courts have held that a market rate fee award implicates proscriptions against fee splitting and the unauthorized practice of law to the extent it enables a corporation to profit from its legal department. To avoid this problem, courts have required either use of a cost-plus approach or a showing that all of the fee award will be put back into legal operations, rather than general corporate coffers. (E.g., Kean v. Stone (3d Cir. 1992) 966 F.2d 119, 123; Harper v. Better Business Services, Inc. (11th Cir. 1992) 961 F.2d 1561, 1564; American Federation of Gov. Employees v. FLRA (D.C. Cir. 1991) 944 F.2d 922, 934-937 [292 App.D.C. 1]; PPG Industries v. Celanese Polymer Specialties Co. (Fed. Cir. 1988) 840 F.2d 1565, 1570; Curran v. Department of Treasury (9th Cir. 1986) 805 F.2d 1406, 1408-1410; Nat. Treasury Emp. U. v. U.S. Dept. of Treasury (D.C. Cir. 1981) 656 F.2d 848 [211 App.D.C. 259]; Thompson v. Chemical Bank (1975) 84 Misc.2d 721 [375 N.Y.S.2d 729, 736-737, 740]; but see Central States v. Central Cartage Co. (7th Cir. 1996) 76 F.3d 114, 115-117 [finding no ethical issues with market rate award because litigant, not counsel, owns the award]; Johnston v. Detroit Hoist & Crane Co. (1985) 142 Mich.App. 597 [370 N.W.2d 1, 3] [although finding ethical issue premature, noting that fee award is to party, not attorney]; see also Cal. Compendium on Prof. Responsibility, pt. II.A, State Bar Formal Opn. No. 1987-91, p. 273.) My construction of section 1717 avoids this potential problem.
Finally, the majority’s concern that a cost-plus approach would be too cumbersome, costly, and intrusive seems overstated. Losing parties would *1107 have a substantial disincentive to pursue the protracted course the majority suggests because cost-and-fee awards include costs and fees incurred in litigating the amount of the award. Moreover, according to amicus curiae Los Angeles County Bar Association, 32 percent of corporate law departments participating in a 1999 survey tracked their costs and charged them back to their corporate clients. As the record shows, PLCM’s counsel operates in just this manner. According to the sworn declaration of PLCM’s trial attorney: “[T]he costs of the [in-house] law department. . . (including salaries) are charged to each corporate subsidiary each year in proportion to the number and complexity of their files. Particular costs attributable to each matter are charged directly to the corporations involved.” Similarly, according to the sworn declaration of the in-house legal department’s financial manager, the operating expenses of the office that performed the legal work in this case, including “attorney and support-staff compensation, rental of office space and equipment, supplies, travel, etc.,” are “charged back to the . . . companies served by [in-house counsel] each year.” Citing this declaration, PLCM responded to Drexler’s claim that fees are not recoverable because “traditional law-firm invoices did not change hands here” by representing to the trial court that “the costs [of in-house counsel] (including everything from attorney and staff salaries to supplies and equipment) are charged back to the subsidiaries receiving the benefits of those services in the corporation’s annual budget process.”[3] Because many corporations use such a system for tracking and allocating in-house legal costs, a cost-plus approach often would seem to involve only slight inconvenience. Given these considerations, administrative concerns do not, in my view, justify ignoring the limits of the parties’ contract.
On June 2, 2000, the opinion was modified to read as printed above.

 All further statutory references are to the Civil Code.

Like the majority, I do not address Drexler’s belated claim that because the represented entities in this case are either subsidiaries of or completely unaffiliated with Aon Corporation, their representation by Aon Corporation’s in-house attorneys constituted the unauthorized practice of law.

The majority asserts that annual charges to PLCM for in-house legal services are made “on a prospective basis.” (Maj. opn., ante, at p. 1098.) I find no evidence in the record to support this assertion. Apparently, it is based on another representation from counsel at oral argument.